The STATE of Ohio, Appellant,

v.

BRAND, Appellee.

[Cite as *State v. Brand,* 157 Ohio App.3d 451, 2004-Ohio-1490.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030388.

Decided March 26, 2004.

Julia L. McNeil, City Solicitor, Ernest F. McAdams Jr., City Prosecutor, and Keith C. Forman, Assistant City Prosecutor, for appellant.

J.G. Keyes Co., LLC, and James G. Keys Jr., for appellee.

---

MARK P. PAINTER, Judge.

{¶ 1} After a car accident, defendant-appellee Sharon D. Brand was cited for driving under the influence,[1] failure to stop after an accident,[2] and failure to control her vehicle.[3] Brand moved to suppress certain evidence, and the trial court granted part of her motion, suppressing the results of Brand's blood test, the results of a horizontal gaze nystagmus ("HGN") test, and statements made by her to police prior to her arrest. The state now appeals, and we affirm in part and reverse in part.

### I. A One–Car Wreck on I–75

{¶ 2} At Brand's suppression hearing, two Cincinnati police officers testified. Officer Joey Stevens testified that he was dispatched to an accident on I–75 at 11 p.m. on July 27, 2002. Stevens testified that when he arrived on the scene, a wrecked car was facing south on northbound I–75, with Brand alone in the car. Witnesses told Officer Stevens that Brand had been driving erratically, hit the median, and developed a flat front left tire. The witnesses told Stevens that Brand had continued driving on the flat tire and had crashed again, ending up in a ditch off the highway. As Officer Stevens approached Brand, she was still trying to drive her car, but her tires were spinning and the car would not move.

{¶ 3} Officer Stevens testified that he noticed a strong odor of alcohol about Brand and that she was dazed and unresponsive. Brand was taken by ambulance to a hospital. When Stevens arrived at the hospital, he saw that Brand was on a backboard and in a neck brace. Stevens observed that Officer Charles Beebe was talking with Brand.

{¶ 4} According to Stevens, Brand was moody and irritated, and did not want to answer questions. But Stevens acknowledged that he did not closely observe the interactions between Officer Beebe and Brand, and could not recall any specific statements Brand had made. Stevens testified that, in his opinion, Brand was under the influence of alcohol or drugs. He also testified that Brand complained of pain while Officer Beebe talked to her. Stevens stated that Officer Beebe read Brand her *Miranda* rights and arrested her.

---

1. R.C. 4511.19(A)(1).

2. R.C. 4549.02.

3. R.C. 4511.202.

{¶ 5} Officer Beebe testified that he saw Brand for the first time when she was in the hospital, and that he noticed that she smelled of alcohol. Beebe asked Brand whether she was involved in a crash, and she said that she did not know what had happened. Beebe observed that Brand's speech was slurred and that her eyes were watery and bloodshot. Beebe testified that he asked Brand where she had been coming from prior to the crash, and that she stated that she had been out celebrating and "drank some wine." According to Beebe, Brand was at times combative, but at other times cooperative.

{¶ 6} Officer Beebe administered the HGN test on Brand and found six clues based on her performance. He testified that Brand said that she was uncomfortable and in pain during the questioning and HGN test, and that her face was bruised. Beebe testified that he concluded that Brand was intoxicated. He read Brand her rights, read her the implied-consent form, asked for a sample of her blood, which Brand refused, and gave her an arrest citation. Hospital personnel later removed a sample of Brand's blood, more than two hours after the accident.

{¶ 7} In October 2002, the trial court dismissed the charges against Brand for lack of prosecution. In February 2003, Brand was again cited for the same charges. Brand filed a motion to suppress, claiming that the state had committed numerous statutory and constitutional violations. The trial court ruled in Brand's favor on three specific claims, holding that the results of Brand's blood test, the result of the HGN test performed on her, and any statements she had made to the police prior to being read her *Miranda* rights were inadmissible.

{¶ 8} Appellate review of a motion to suppress presents a mixed question of law and fact.[4] When considering a motion to suppress, the trial court assumes the role of trier of fact.[5] An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence, but it then must independently determine, without deference to the trial court, whether the facts satisfy the applicable legal standard.[6]

## II. The State Must Prove Compliance

{¶ 9} In its first assignment of error, the state argues that the trial court erred when it suppressed Brand's blood test results. At the suppression hearing, Brand argued that the blood test was not conducted in accordance with Ohio Department of Health regulations and that the test was not done within two hours of the accident.

---

4. See *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

5. Id.

6. Id.

{¶ 10} The trial court found that the state had offered "no testimony to support that it [the blood] was stored according to the Department of Health regulations." The court stated, "The standard is not strict compliance or substantial compliance. The Court will sustain the motion to not admit. The blood test is inadmissible at trial."

{¶ 11} In any criminal prosecution under R.C. 4511.19, "the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation."[7] The statute also requires that "[t]he bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."[8]

{¶ 12} In *Newark v. Lucas*,[9] the Ohio Supreme Court created a distinction between offenses under R.C. 4511.19(A)(1), and the "per se" offenses of R.C. 4511.19(A)(2) through (9). The "per se" offenses define " 'the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others.' * * * In determining whether one of the per se offenses was committed by the defendant, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant operated a vehicle within the state and that the defendant's chemical test reading was at the proscribed level."[10] Because the results of the chemical test of the bodily substance are clearly an element of the proof for the per se offenses, the results of such tests and their accuracy are crucial to a determination of guilt or innocence.[11]

{¶ 13} But in an R.C. 4511.19(A)(1) prosecution, there is no requirement that alcohol or a drug of abuse be present in a specific concentration. Unlike the per se offenses, where the critical issue is the accuracy of the chemical test measuring the concentration level of alcohol in one's blood, breath, or urine, the focus in a subsection (A)(1) prosecution is on the defendant's ability to perceive,

---

7. R.C. 4511.19(D).

8. Id.

9. *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 532 N.E.2d 130.

10. Id., 40 Ohio St.3d at 103, 532 N.E.2d 130, quoting *State v. Tanner* (1984), 15 Ohio St.3d 1, 6, 15 OBR 1, 472 N.E.2d 689.

11. See *Newark v. Lucas*, supra, 40 Ohio St.3d at 103, 532 N.E.2d 130.

make judgments, coordinate movements, and safely operate a motor vehicle.[12] The test results in a subsection (A)(1) prosecution are merely probative of the issue of impaired driving, not dispositive, and are considered in addition to any other evidence of impaired driving.[13]

{¶ 14} The *Newark* court then decided that, in a subsection (A)(1) prosecution, because the bodily substance test results are not dispositive of guilt or innocence, test results drawn more than two hours after the time of the alleged violation should not be treated in an exclusionary manner.[14] That is, the Ohio Supreme Court created a limited exception that allows into evidence bodily-substance test results taken beyond the two-hour limit, as long as the state introduces the test results along with expert testimony. Such expert testimony "would be necessary to relate the test results to the defendant and to the time of the alleged violation, as well as to relate the numerical figure representing a percentage of alcohol by weight in the bodily substance, as shown by the results of the chemical test, to the common understanding of what it is to be under the influence of alcohol." [15]

{¶ 15} We think *Newark* created only a limited exception because of footnote 7, in which the court stated, "It also must be established by the prosecution that the test was properly administered and analyzed in accordance with the remainder of R.C. 4511.19(B)." (The current R.C. 4511.19[D] corresponds to R.C. 4511.19[B] at the time of *Newark*.)

{¶ 16} A number of Ohio appellate courts have seized upon the distinction made in *Newark* between subsection (A)(1) and subsections (A)(2) through (9) and have interpreted the decision as creating more than just a limited exception. Said one court, "The Supreme Court of Ohio has held that in a criminal prosecution for driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1), the results of a properly administered bodily substances test presented with expert testimony may be admitted into evidence despite a lack of literal compliance with the requirements of R.C. 4511.19." [16] The courts have thus expanded the *Newark* holding to mean that bodily-substances test results in an R.C. 4511.19(A)(1) prosecution can be admitted without the state proving

---

12. Id., 40 Ohio St.3d at 104, 532 N.E.2d 130.

13. Id.

14. Id.

15. Id., 40 Ohio St.3d at 105, 532 N.E.2d 130.

16. See *State v. Quinones* (Feb. 14, 1996), 9th Dist. No. 95CA006084, 1996 WL 62578.

compliance with Department of Health regulations.[17]   The courts have reasoned that any variance from the regulations goes to the weight to be assigned to the evidence, not to its admissibility.[18]

{¶ 17} We disagree with these interpretations of *Newark*, based upon footnote 7 in the *Newark* decision.   Though the Supreme Court may not have realized the ramifications of the footnote, we cannot interpret it to mean anything but that, in a subsection (A)(1) prosecution, the state must still comply with all requirements under R.C. 4511.19(D).   The *Newark* court created an exception for the two-hour requirement in subsection (A)(1) prosecutions, provided that the state offered expert testimony at trial.   But the footnote clarifies that when a defendant challenges any other R.C. 4511.19(D) requirement, the burden is on the state to prove that the test results were obtained in compliance with the statute.[19]

{¶ 18} Under *State v. French*, a defendant charged under R.C. 4511.19(A) must challenge the admissibility of a bodily-substance test through a pretrial motion to suppress.[20]   Because the limited exception created by *Newark* requires the state to offer expert testimony, we assume that, in such a case, the trial court must make the determination of admissibility at trial, rather than in a suppression hearing.   But in all other challenges to a bodily-substance test based on something other than a violation of the two-hour rule, regardless of under what subsection, the proper time for the trial court to determine admissibility must be at a pretrial suppression hearing.

{¶ 19} If this were not the rule, and all challenges in a subsection (A)(1) prosecution were addressed at trial, the state might have to prove compliance twice.   For example, suppose the state prosecuted a defendant under both R.C. 4511.19(A)(1) and (3), and the defendant challenged the state's evidence as violating the two-hour rule as well as other requirements under R.C. 4511.19(D). The state would have to prove compliance with requirements other than the two-hour rule at the suppression hearing for the (A)(3) charge, and then prove

---

**17.**   See *State v. Hurst* (Nov. 20, 1991), 1st Dist. No. C–900701, 1991 WL 243534;   see, also, *State v. Rains* (1999), 135 Ohio App.3d 547, 552–553, 735 N.E.2d 1;   *State v. Herrig* (Apr. 16, 1999), 6th Dist. No. WD–98–047, 1999 WL 247095;   *State v. Quinones* (Feb. 14, 1996), 9th Dist. No. 95CA006084, 1996 WL 62578;   *State v. Wolfrum* (June 27, 1997), 6th Dist. No. F–96–035, 1997 WL 362472;   *Coshocton v. Davis* (Dec. 4, 1990), 5th Dist. No. 90–CA–7, 1990 WL 200350 (Milligan, J., concurring);   *Mason v. Murphy* (1997), 123 Ohio App.3d 592, 597, 704 N.E.2d 1260.

**18.**   See *State v. Herrig*, supra;   *State v. Wolfrum*, supra;   *Coshocton v. Davis*, supra..

**19.**   See, also, *State v. Bevins* (Dec. 29, 1995), 4th Dist. No. 94CA750, 1995 WL 763833;   *State v. Gass* (June 25, 1997), 1st Dist. No. C–961062, 1997 WL 346109.

**20.**   See *State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, paragraph one of the syllabus.

compliance for the same requirements at trial for the (A)(1) charge. To avoid such a result, a trial court determination of whether to admit evidence that the defendant has claimed is noncompliant—other than evidence obtained outside the two-hour limit in an (A)(1) prosecution—must be made in a suppression hearing.

{¶ 20} The various approaches taken by appellate courts on the admissibility of evidence in an R.C. 4511.19(A)(1) prosecution demonstrates that the law is unclear. In *State v. Mayl*,[21] the Second Appellate District wrestled with the issue of whether all R.C. 4511.19(D) requirements apply to subsection (A)(1) prosecutions. The court reached opposite conclusions in its majority and concurring opinions.

{¶ 21} We note that the Ohio Supreme Court has recently agreed to hear the appeal of *State v. Mayl*.[22] We certainly hope that the Supreme Court will resolve and bring some clarity to these issues, not only the issue of whether all R.C. 4511.19(D) requirements apply to subsection (A)(1) prosecutions, but also as to what challenges should be made at trial as opposed to at a suppression hearing.

{¶ 22} Turning to the facts of our case, Brand moved to suppress her blood test results, claiming that the blood test was not conducted in accordance with Ohio Department of Health regulations, and that the test was not done within two hours of the accident. The trial court determined that it was the state's burden to prove compliance with all requirements other than the two-hour rule, and that the state had to meet its burden at the motion to suppress. Because the state offered no evidence of compliance, the trial court granted the motion to suppress Brand's blood test results.

{¶ 23} Were it not for an exception specific to this case, discussed in the next section, we would agree with the trial court's decision to suppress the blood test results. At the suppression hearing, the state offered no evidence of compliance with R.C. 4511.19(D) requirements. Under *Newark*, because the state failed to establish compliance with R.C. 4511.19(D) requirements, other than the two-hour rule, the blood test results should have been suppressed. But because Brand's blood was drawn by medical personnel and not at the request of a law enforcement officer, the requirements of R.C. 4511.19(D) did not apply at all.

{¶ 24} Therefore, while in general, the trial court would have been correct in its determination that the state bore the burden to prove compliance with all R.C. 4511.19(D) requirements other than the two-hour rule at a suppression hearing, in this case, the trial court's ruling was in error.

---

**21.** See *State v. Mayl*, 154 Ohio App.3d 717, 2003-Ohio-5097, 798 N.E.2d 1101.

**22.** See *State v. Mayl*, 101 Ohio St.3d 1466, 2004-Ohio-819, 804 N.E.2d 40.

### III. Not Drawn at the Request of Law Enforcement

{¶ 25} R.C. 4511.19(D) states that a court may admit evidence concerning the concentration of alcohol in a defendant's blood drawn within two hours of the time of the alleged violation. It then states, "When a person submits to a blood test *at the request of a law enforcement officer* under section 4511.191 of the Revised Code, only a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw blood for the purpose of determining the alcohol, drug, or alcohol and drug content of the whole blood, blood serum, or blood plasma. * * * The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶ 26} At the hospital, Officer Beebe asked Brand to give a blood sample, and she refused. Hospital personnel later took a sample of Brand's blood, presumably for medical purposes. Though it is not clear from the record, we assume that the state then obtained the blood-alcohol level of Brand's blood through R.C. 2317.02(B)(2)(a). That statute specifically waives the doctor-patient privilege in DUI criminal investigations and allows law enforcement officers to obtain the results of any test concerning alcohol or drug concentration that was administered by medical personnel.

{¶ 27} Therefore, because Brand did not submit to a blood test at the request of a law enforcement officer, the results of her blood test were not subject to the regulations of R.C. 4511.19(D). The Fifth, Ninth, and Twelfth Appellate Districts have come to this same conclusion in similar cases.[23] The Fifth Appellate District has stated that while R.C. 4511.19(D) provides a specific procedure when a blood test is taken at the request of a law enforcement officer, R.C. 2317.02(B)(2)(a) omits any such procedure after a criminal investigation has begun.[24]

{¶ 28} We note that the Third Appellate District has analyzed this issue and has come to the opposite conclusion. In *State v. Meyers*,[25] the Third Appellate District decided that the Ohio Supreme Court, in *State v. Ripple*,[26] had indicated that the promulgation of standards by the Director of Health and compliance with those standards were mandatory in order to admit any evidence of drug or alcohol testing conducted to establish intoxication in DUI prosecutions.

---

23. See *State v. Lloyd* (Mar. 6, 2003), 5th Dist. No. 02–CA–33; *State v. Quinones*, supra; *Middletown v. Newton* (1998), 125 Ohio App.3d 540, 545, 708 N.E.2d 1086.

24. See *State v. Lloyd*, supra.

25. 146 Ohio App.3d 563, 2001-Ohio-2282, 767 N.E.2d 739, at ¶ 20.

26. 70 Ohio St.3d 86, 89, 637 N.E.2d 304.

{¶ 29} But, in our view, the reliance on *Ripple* was misplaced. In *Ripple*, the Ohio Supreme Court held that because the General Assembly had not promulgated regulations concerning drug testing, "a chemical analysis purporting to indicate the presence of drugs in an accused is inadmissible in a prosecution brought pursuant to R.C. 4511.19." [27] The court in *Ripple* declined to extend the allowance made by *Newark v. Lucas* (admitting evidence not in compliance with R.C. 4511.19[D] in an [A][1] prosecution) "since the Director of Health has yet to approve any methods for analyzing drugs contained in the bodily substances of an accused." [28]

{¶ 30} *Ripple* concerned only the lack of standards for drug-testing methods. We do not believe that *Ripple* stands for the proposition that the standards for alcohol-testing methods in R.C. 4511.19(D) must apply for evidence admitted under an entirely different statute. If the General Assembly had intended for the standards of R.C. 4511.19(D) to apply for all evidence admitted in DUI cases, it could have easily so stated.

{¶ 31} Therefore, we hold that because Brand's blood sample was not taken at the request of a law enforcement officer, the state did not have the burden to prove substantial compliance with the testing procedures of R.C. 4511.19(D). Accordingly, we hold that Brand's blood test was admissible and sustain the state's first assignment of error.

### IV. Pre–Miranda Statements

{¶ 32} In its second assignment of error, the state argues that the trial court erred when it suppressed statements made by Brand to Officer Beebe in the hospital before he informed her of her *Miranda* rights.[29]

{¶ 33} To trigger the need for *Miranda* warnings, a defendant must be subject to a custodial interrogation.[30] The determination whether a custodial interrogation has occurred requires an inquiry into how a reasonable person in the suspect's position would have understood the situation.[31] "The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of

---

27. Id.

28. Id.

29. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

30. See *State v. Biros* (1997), 78 Ohio St.3d 426, 440, 678 N.E.2d 891, citing *Oregon v. Mathiason* (1977), 429 U.S. 492, 494, 97 S.Ct. 711, 50 L.Ed.2d 714.

31. See *State v. Biros*, supra, citing *Berkemer v. McCarty* (1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317.

the degree associated with a formal arrest."[32]  Determining what constitutes "custody" for *Miranda* purposes depends upon the facts of each case.[33]

{¶ 34} Roadside questioning of a motorist by police, either for a routine traffic stop or because of an accident, is typically not considered custodial.[34]  Interrogation conducted inside a police vehicle is usually custodial interrogation.[35]  But police questioning of a motorist in a hospital is a situation somewhere between questioning at the accident scene and questioning in a police vehicle.

{¶ 35} We note that, in most cases, the police officer, probably in an abundance of caution, reads the motorist his or her *Miranda* rights before the questioning at the hospital.  That is probably what should be done.  But that does not necessarily mean that to do so is mandatory.

{¶ 36} In this case, when Officer Stevens arrived at the hospital, Brand was in a neck brace and lying on a backboard.  Stevens testified that she was irritated and did not want to answer questions.  Officer Beebe also testified that Brand was in a neck brace and lying on a backboard at the hospital.  Both officers testified that Brand complained of pain during the questioning.  Beebe testified that Brand "was injured and was unable to get off the bed."  He asked her to perform only the HGN test, but none of the other field sobriety tests, because she had to "stay laying [sic] on the cot."

{¶ 37} During questioning, Brand admitted that she "drank some wine."  Based on his observations, Beebe concluded that Brand was intoxicated, informed her of her *Miranda* rights, and placed her under arrest.  Because of her medical condition, arresting Brand meant merely issuing her an arrest citation.  Brand made no further statements and requested an attorney.

{¶ 38} We conclude that, for practical purposes, Brand's freedom of movement was restrained as if she had already been placed under formal arrest.  Brand was confined on a cot, unable to get up or even to move her head around.  She expressed an unwillingness to answer questions and complained of pain throughout.  We conclude that a reasonable person in Brand's position would have not felt free to leave or free not to answer the police questions.

---

32. See *State v. Biros,* supra, quoting *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275.

33. See *California v. Beheler,* supra.

34. See *Berkemer v. McCarty,* supra;  *State v. Sunday* (May 10, 1989), 1st Dist. Nos. C–880221, C–880222, and C–880223, 1989 WL 49140.

35. See *State v. Darst* (Sept. 2, 1997), 4th Dist. No. 97 CA 15, 1997 WL 567939.

{¶ 39} Brand wants us also to consider her belief that the police had already decided to arrest her for DUI before Officer Beebe even arrived at the hospital. She argues that Officer Beebe was not at the hospital to investigate the accident but was there to arrest her. But we note that while Beebe may have suspected that Brand was the cause of the accident and that she was driving under the influence, the fact that an investigation focuses on a particular suspect does not trigger the need for *Miranda* warnings.[36] More important to our determination that Beebe should have read Brand her *Miranda* rights was that Brand was restrained during questioning and that a reasonable person in her position would not have felt free to leave.

{¶ 40} Because Officer Beebe's questioning of Brand was a custodial interrogation, Beebe violated Brand's *Miranda* rights. Therefore, the trial court properly suppressed Brand's statements. Accordingly, we hold that Brand's statements were inadmissible and overrule the state's second assignment of error.

## V. HGN Test

{¶ 41} In its third assignment of error, the state argues that the trial court erred when it suppressed the result of the horizontal gaze nystagmus test performed on Brand by Officer Beebe. The trial court determined that the HGN test was unreliable. The court cited the facts that Brand had had her car air bag deployed in her face, and that, during the HGN test, Brand was restricted, lying on her back and in a neck brace. These facts led the court to find that the HGN test was not conducted according to standards and that it was unreliable.

{¶ 42} We must accept the trial court's findings of fact if they are supported by some competent and credible evidence. Both Officers Stevens and Beebe testified that Brand was on a backboard and in a neck brace when she took the HGN test. Officer Stevens testified that Brand was complaining of pain during the test, and he admitted that he knew that pain or injury could interfere with HGN test results. Officer Beebe testified that Brand's face was bruised and that Brand had said that she was uncomfortable and in pain while he spoke with her at the hospital.

{¶ 43} In *State v. Bresson*, the Ohio Supreme Court held, "A properly qualified officer *may* testify at trial regarding a driver's performance on the horizontal gaze nystagmus test as it pertains to the issue of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol."[37] (Emphasis added.) The trial court, therefore, could have admitted the HGN test results, but it was not required to.

---

36. See *State v. Young* (Oct. 7, 1996), 12th Dist. No. CA96–04–008, 1996 WL 571366.

37. (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330, syllabus.

{¶ 44} The court made a factual determination that the HGN test results were unreliable. Because competent and credible evidence in the record supports the trial court's finding, we must accept that the HGN test results were unreliable. Based on that, we agree that the test results should have been suppressed. Accordingly, we overrule the state's third assignment of error.

### VI. *Suppression Affirmed in Part and Reversed in Part*

{¶ 45} We therefore affirm that part of the trial court's judgment suppressing Brand's statements and the results of her HGN test. But with respect to the suppression of the blood test results, we reverse the judgment and remand the case to the trial court for further proceedings in accordance with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

HILDEBRANDT, P.J., and GORMAN, J., concur.