THE STATE OF OHIO, APPELLEE, *v.* LEWIS, APPELLANT.

(No. 69-268—Decided March 18, 1970.)

*Mr. Forrest P. Moore,* prosecuting attorney, for appellee.

*Messrs. Johnston, Stilwell & Oberlin, Messrs. Power, Griffith, Jones & Bell* and *Mr. James E. Bell,* for appellant.

TAFT, C. J. The evidence in the record is sufficient to establish beyond a reasonable doubt all of the alleged facts

in the above quotation from the indictment, excepting those italicized in that quotation.

There is ample evidence to support a conclusion that Lindsay Consulting Service was the alter ego of Sterling Lewis and his wife, the defendant Libby Lewis, and that the account of Lindsay Consulting Service in the Mt. Vernon bank was their property. However, in our opinion, the evidence in the record is not sufficient to enable reasonable minds to conclude beyond a reasonable doubt that Sappington was any part of Lindsay Consulting Service or had any interest in its Mt. Vernon bank account.

The only evidence offered by the state, which could have any apparent tendency to prove that Sappington was a part of Lindsay Consulting Service or that he had any interest in its Mt. Vernon bank account, was testimony of a Mt. Vernon bank employee. He testified that the Lindsay Consulting Service account was opened for and in the name of that organization on May 9, 1966 by Sterling Lewis and that Lewis then gave information that was placed on a card which indicated that signatures of Sterling Lewis (designated thereon as President), Mrs. Libby Lewis (with a notation thereon of ''Card Out'') and Mr. John Sappington (with a notation thereon of ''Vice Pres'' and ''Card Out'') were to be authorized signatures. This employee testified that the bank never received a signature from either Libby Lewis or Sappington and that there was never any authorized signature for the account other than that of Sterling Lewis.

Although the monthly bank statements for this account are in evidence and indicate over 200 checks drawn against the account and although the record of this case indicates a subpoena for this witness to produce ''copies of all checks written on'' this account, only four checks were offered in evidence. Also, there is nothing in the record to indicate why other checks were not offered. These four checks were payable to Libby Lewis. If there were any checks drawn on this account payable to or endorsed by Sappington, the state would certainly have offered them

in evidence. Thus, it is reasonable to infer that there were no such checks.

We attach no significance to the fact that the printing on checks for the account listed "Sterling Lewis, President" and "John Sappington, Vice President." It is obvious that this happened merely as a result of the information which the bank employee said was furnished by Sterling Lewis when the account was opened. We can only speculate as to whether Sappington authorized him to give such information or whether there was any factual basis for what he told the bank employee witness about Sappington's association with Lindsay Consulting Service. Neither Sappington nor Sterling Lewis testified.

Apparently, the theory of the prosecution in drawing this indictment was that the contract with Lindsay Consulting Service provided for payments to it for services which Sterling Lewis and Sappington were already obligated by their employment contracts to render for the hospital, and that therefore it enabled them to get from the hospital something which the hospital was already entitled to receive from them by reason of its employment contracts with them. There is nothing in the written contract with Sterling Lewis, under which he was to be paid $600 per month, to indicate what his duties were to be except that he was to be director of the hospital laboratory. There is nothing in the contract with John Sappington to indicate that he was to perform any laboratory services. There is no other evidence that would provide a reasonable basis for a conclusion that the contracts with Sterling Lewis or Sappington already entitled the hospital to what it was to receive under the contract with Lindsay Consulting Service.

To the contrary, the secretary of the board of trustees, who was a member of that board and who testified on behalf of the state, testified that, at all times after Sterling Lewis was employed, she and the other board members knew that Sterling Lewis and Libby Lewis were to furnish laboratory services for the hospital and to be com-

pensated at the rate of $600 per month to Sterling Lewis and 35 per cent of the hospital's gross charges for those services to the two of them. Another of the six trustees testified on behalf of the defendant to the same effect. There was no evidence to the contrary.

In explaining his conclusion that the defendant Libby Lewis was guilty, the trial judge stated that it was "necessary that we look to the audit of the State Auditor." He then pointed out that this audit showed charges by the laboratory, which were included in the figures upon which the 35 per cent payable to Lindsay Consulting Service was based, for services, which were either not authorized by physicians as required by the Lindsay Consulting Service contract or were not rendered.

He apparently recognized that there was no other evidence in the record tending to prove that Lindsay Consulting Service, Sterling Lewis, Sappington or defendant Libby Lewis got anything from the hospital that they were not entitled to receive under contracts with the hospital that were executed on behalf of the hospital with the knowledge of and either the express approval or the acquiescence of all of its trustees.

Section 10, Article I of the Ohio Constitution, provides in part:

" * * * In any trial, in any court, the party accused shall be allowed * * * to demand the nature and cause of the accusation against him, and to have a copy thereof * * *."

See also Article VI, Amendments to the Constitution of the United States, which reads in part:

"In all criminal prosecutions the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation * * *."

Those constitutional provisions may be satisfied by an indictment. However, where they are not, the prosecuting attorney is required on request to "furnish a bill of particulars setting up specifically the nature of the offense charged." See Section 2941.07, Revised Code.

Section 2921.14, Revised Code, requires a conspiracy to defraud a subdivision of the state in some "manner." Hence, in order to state specifically the nature of an offense under Section 2921.14, Revised Code, in accordance with the requirements of the last sentence of Section 2941.- 07, Revised Code, an indictment or, if an indictment does not and a bill of particulars is requested, the bill of particulars must specify some manner of defrauding that was a part of the conspiracy charged.

In the instant case, the indictment specifically stated the manners of defrauding the state that were claimed to be a part of the conspiracy charged.

Under this indictment, the state specified the manners of defrauding the hospital which were claimed to be a part of the conspiracy to defraud as (1) by taking something from the hospital without its knowledge as compensation for services that two of the conspirators were already obligated to provide, or (2) by enabling paid hospital employees (Sappington and Sterling Lewis) to receive from the hospital and without its knowledge profits in addition to their compensation.

As hereinbefore pointed out, there is insufficient evidence in the record to support a reasonable finding that the hospital was defrauded in either such manner.

The indictment did not even suggest that the defrauding of the hospital, that was a part of the alleged conspiracy to defraud, was by a taking from the hospital through Lindsay Consulting Service of a percentage on charges for services that were not authorized by physicians or were not rendered. Perhaps, it was for this reason that the defendant did not seriously oppose the testimony of the state examiner which was designed to prove that such charges were made and that 35 per cent of such charges were paid to Lindsay Consulting Service.*

---

*Also, defendant's agreement, as to the admission of the part of the state auditor's report which was admitted, may have been induced by the fact, that the previous testimony of the examiner who prepared it had raised a considerable doubt as to the soundness of his

Where an indictment for a conspiracy to defraud under Section 2921.14, Revised Code, specifies the manner or manners of defrauding relied upon as the defrauding part of that conspiracy, a conviction cannot be based upon evidence establishing a manner of defrauding other than one so specified. See *State* v. *Pittman* (1967), 9 Ohio St. 2d 186, 224 N. E. 2d 913; 41 Am. Jur. 2d 1038, 1040 and 1042, Sections 260, 263 and 265. As stated by Wanamaker, J., in the opinion in *Bandy* v. *State* (1921), 102 Ohio St. 384, 387, 131 N. E. 499:

"The indictment, information, or affidavit in a criminal prosecution, necessarily confines the state to the

conclusions that patients had been frequently charged for laboratory services not authorized by physicians or for laboratory services not performed.

He testified that the procedure, set up in this hospital for getting laboratory services, was to have four copies of a request for services prepared. The request forms were prepared by the printer in sets of four, each of which had the same number on it. He testified on direct examination that this procedure apparently "broke down" because he found instances where forms relating to a single request for laboratory services bore different numbers.

A request for laboratory services was supposed to be prepared at the nursing station where one copy was retained. The three other copies were supposed to go to the laboratory, where the doing of the work and its results were supposed to be recorded on those three copies. Thereafter, one copy, with the charge to be made against the patient for those services, was sent to the bookkeeping department and used as the basis for billing the patient and for paying 35 per cent of that billing to Lindsay Consulting Service. The other copy was supposed to be attached to the patient's medical record.

The examiner examined the bookkeeping copy and sought to find the copy for the same work which should have been attached to the patient's medical record. If he did not find the latter copy so attached, he concluded that the laboratory work had not been done. As to those instances where he found that work charged for had not been done, he testified that he did not examine any significant number of those copies that should have been kept in the laboratory. If the work had been done, those copies should have so indicated. Also, as to work which he found had been done without authority from attending physicians, he testified that he had not consulted any one of them to determine whether such authority had or had not been given.

charge made against the defendant, in order that the defendant shall know, as the Constitution provides, 'The nature of the accusation against him.' "

This case differs from *Tingue* v. *State* (1914), 90 Ohio St. 368, 108 N. E. 222, which construed what is now Section 2941.26, Revised Code. That statute states in part that a "variance is not ground for an acquittal * * * *unless* such *variance* is material to the merits of the case or *may be prejudicial* to the defendant." (Emphasis added.) It is obvious that permitting a conviction under Section 2921.14, Revised Code, to stand on the basis of proof as to a manner of defrauding other than one of the two manners specified in the indictment, as in the instant case, "may be prejudicial to the defendant." Also, unlike in the *Tingue case,* the variance in the instant case was, to use the words of paragraph two of the syllabus in that case, "based upon" an "essential part of" an "essential element of the offense."

It may be suggested that the first sentence of Section 2941.30, Revised Code, would authorize an amendment to this indictment notwithstanding the apparent limitation in the second sentence of that statute. However, the court did not amend and the state has never asked for an amendment of the indictment to specify the manner of defrauding which the state examiner's report may have tended to prove. Hence, we deem it unnecessary to consider whether that statute would authorize such an amendment.

Section 2945.83, Revised Code, provides in part:

"No motion for new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:

"* * *

"(B) A variance between the allegations and the proof thereof unless the accused is mislead or prejudiced thereby * * *."

In our opinion, where an indictment under Section 2921.14, Revised Code, for conspiracy to defraud specifies the manner of defrauding relied upon as the defrauding

part of that conspiracy, the proof of a manner of defrauding that is not even suggested by any allegations of the indictment or by any bill of particulars thereunder, will necessarily prejudice the accused.

For the foregoing reasons, the judgment of the Court of Appeals must be reversed and final judgment rendered discharging the defendant. Hence, it is not necessary to consider the other questions raised in the briefs of the parties.

*Judgment reversed.*

LEACH, HERBERT, DUNCAN and CORRIGAN, JJ., concur.

O'NEILL and SCHNEIDER, JJ., dissent.

LEACH, J., of the Tenth Appellate District, sitting for MATTHIAS, J.