**The STATE of Ohio, Appellee,**

v.

**STAFFORD, Appellant.**

[Cite as *State v. Stafford*, 158 Ohio App.3d 509, 2004-Ohio-3893.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030297.

Decided July 23, 2004.

510

512

Michael K. Allen, Hamilton County Prosecuting Attorney, and Ronald W. Springman, Assistant Prosecuting Attorney, for appellee.

Bernard F. Wong, for appellant.

Mark P. Painter, Judge.

{¶ 1} Defendant-appellant Darrin Stafford appeals his conviction for aggravated vehicular homicide and three counts of vehicular assault. We affirm the trial court's decisions regarding the pretrial motions and the findings of guilt.

{¶ 2} But we must vacate the sentence and remand for resentencing because the trial court improperly impinged on Stafford's right to a jury trial. The right to a jury trial is a fundament of American law. We will not permit a trial court to threaten a defendant with a harsher sentence if he exercises a fundamental right.

## I. A Tragic Accident

{¶ 3} In November 2001, Stafford and Frederick Shipman, a coworker and friend, decided to attend a Cincinnati Bengals football game. They lived in Evansville, Indiana, which is a several hours' drive from Cincinnati. The two got into Shipman's Kia Sportage, and Shipman started driving to Cincinnati the morning of the game.

{¶ 4} Stafford is a paraplegic who cannot voluntarily move his legs. He was licensed to drive, but only if the vehicle was equipped with special adaptations such as hand controls for the accelerator and brake. But Stafford's driver's license had been suspended under Indiana law earlier that year because he had failed to appear in court for a traffic violation.

{¶ 5} On the road near Louisville, Shipman was having trouble driving because he had been drinking heavily the night before. So Stafford and Shipman switched places and Stafford continued to drive to Cincinnati. He drove along Interstate 71 and Interstate 75, over the Brent Spence Bridge, and exited at Second Street.

{¶ 6} As the Kia approached an intersection on Second Street, the vehicle went through a red light. Unfortunately, there were many pedestrians crossing the street who were also headed to the Bengals game. The Kia struck Scott Asbrock, Stewart Williams, Kyle Fields, and Officer Jon Harris. Asbrock died as a result of his injuries. Williams was knocked unconscious, but was revived and taken to the hospital. He suffered multiple skull fractures and brain trauma and was in a coma for several months before finally regaining consciousness. Williams has had to undergo extensive rehabilitation. Fields suffered a broken leg, along with various cuts and bruises. The Kia clipped Officer Harris, who was assisting pedestrians across the street, and injured his wrist. Other pedestrians may have sustained minor injuries, but none of those injuries led to criminal charges.

{¶ 7} Officer Harris ran after the Kia, which came to a stop after a block or two. Officer Harris, with his gun drawn, opened the driver-side door to see Stafford in the driver's seat, bent over with his hands on the brake pedal. Stafford screamed, "Please don't shoot me. I'm handicapped." And Shipman added, "I told his ass to stop."

{¶ 8} Officer Gregory Toyeas, who arrived at the scene within 30 to 45 minutes after the accident, took and recorded Stafford's statement about the accident. On the tape, Stafford stated that he had begun driving the Kia near Louisville and that he was the one driving when the accident occurred.

{¶ 9} Officer Melissa Cummins was dispatched to the scene with a police scout car, which is a large vehicle similar to a Ford Explorer. Sometime after Officer Toyeas had questioned Stafford, Officer Cummins helped Stafford into the back of her vehicle. She then asked him what had happened. At a pretrial hearing, Officer Cummins testified that she had not read Stafford his *Miranda* rights. But at trial, she testified that she had since remembered that she had, in fact, read Stafford his *Miranda* rights. Officer Cummins then testified that Stafford told her that he had begun driving the Kia just outside Louisville.

{¶ 10} Stafford was arrested and later charged with one count of aggravated vehicular homicide and three counts of vehicular assault. At trial, Stafford argued that he had not been driving the Kia at the time of the accident. Instead, he said that Shipman had been driving at the time of the accident. Stafford claimed (and still claims) that Shipman forced him to switch places after the accident but before Officer Harris arrived at the vehicle. Stafford argued that his statements to the police were to protect Shipman and that he was not aware of the seriousness of the accident until after the questioning.

{¶ 11} The jury did not believe Stafford's story and found him guilty of all four counts. The trial court sentenced him to 20 years' imprisonment.

{¶ 12} On appeal, Stafford assigns seven errors: (1) the trial court should have granted his motion to modify the indictment and his motion in limine regarding his Indiana license suspension, (2) Stafford's statements to the police should have been suppressed, (3) it was error to allow the jury to view the Kia without authenticating it, (4) he was denied due process when the trial court threatened him with the choice of pleading guilty or facing the maximum sentence, (5) Shipman's hearsay statement should not have been admitted, (6) the verdict was against the sufficiency and the manifest weight of the evidence, and (7) the 20–year sentence was unconstitutional.

## II. The Sentence

{¶ 13} In his seventh and final assignment of error, Stafford argues that his sentence violated his due-process rights. We agree. The trial court imposed

a harsher sentence because Stafford had asserted his right to a jury trial. This was reversible error.

{¶ 14} A criminal defendant is guaranteed the right to a jury trial and should never be punished for exercising that right or for refusing to plead guilty.[1]

{¶ 15} Once the record shows that (1) the trial court engaged in plea or sentence bargaining, (2) a tentative sentence was discussed, and (3) a harsher sentence followed a breakdown in negotiations, there is a presumption that the harsher sentence was a result of the defendant's failure to plead guilty. To overcome this presumption, the record must show that no improper weight was given to the failure to plead guilty, and it must also affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history—not as punishment for asserting his right to a jury trial.[2]

{¶ 16} A harsher sentence following a trial is sometimes justified because the trial court usually has access to more relevant sentencing information after a trial than it had before the trial.[3] But that was not the case here.

{¶ 17} After the state had made its opening statement, the trial court excused the jury from the courtroom and had a plea discussion with Stafford on the record. The trial court urged Stafford to plead guilty, suggesting, "I would probably sentence you to a term in the Department of Corrections of 11 years." The court continued, "And I don't think you should gamble 12 years of your life on what [criminals and jail-house lawyers] try and tell you."

{¶ 18} Possibly the most damning statements clearly informed Stafford that he would be rewarded for pleading guilty even though the trial court felt his sentence should be heavier:

{¶ 19} "I'm aware of the facts and I understand the law. I'm trying to envision a defense; one or two things may be possible. I'm having a hard time envisioning a defense. As we are here today and I told your counsel when I had this discussion in my chambers, based upon the opening statement of the prosecutor, my feeling concerning possible sentence is different than it was the other day because I've been made aware of other facts that have been alleged and that were detailed by the prosecution in their opening statement.

---

1.  *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220.

2.  *Columbus v. Bee* (1979), 67 Ohio App.2d 65, 21 O.O.3d 371, 425 N.E.2d 409, citing *U.S. v. Stockwell* (C.A.9, 1973), 472 F.2d 1186, certiorari denied (1973), 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409.

3.  Id.

{¶ 20} "And the only reason I'm even discussing this with you, really, has nothing to do with you, but has to do with the families of the people involved, of the victims, and if I can somehow circumvent having them to have to sit through and listen to the trial and have the witnesses testify, I told your attorney today that if, in fact, you would plead guilty to these charges, I'd probably still impose the same sentence that we discussed the other day.

{¶ 21} "* * *

{¶ 22} "If, in fact, you're found guilty, and the evidence is presented at a trial as detailed by the prosecutor in their opening statement, again, I'm not going to prejudge the sentence, but *I would really be inclined to give you the maximum consecutively on all four counts.*"  (Emphasis added.)

{¶ 23} We cannot say what facts the trial court already knew at the time it offered Stafford the plea.  The trial court admitted that it was aware of certain facts that warranted a heavier sentence than the one offered in the plea bargain. We cannot ascertain what these facts were, and it would be imprudent to attempt a guess.  But the trial court said that it would be inclined to give Stafford the maximum based on what it knew at the time of the plea negotiations.  When Stafford did not agree to the 11–year deal, the trial court gave him 20 years' imprisonment.

{¶ 24} The trial court clearly threatened Stafford—plead and get 11 years or go to trial and probably get 23 years.  This was grossly improper.  And it demonstrated a reasonable likelihood that the trial court punished Stafford with nine extra years in prison (the 20 years he actually received minus the 11 he was offered) for asserting his right to a jury trial.

{¶ 25} The trial court went to great lengths to attempt to justify its 20–year sentence, even adding a supplement to its felony sentencing findings.  And the trial court did not actually impose the maximum 23–year sentence.  But none of this disguised the fact that the trial court sentenced Stafford to nine extra years of imprisonment for asserting his right to a jury trial.

{¶ 26} Even though Stafford's trial counsel did not object to the trial court's discussion with Stafford, the blatant threat and the 20–year sentence gave rise to plain error.  Although a trial court's sentencing discretion is broad, the trial court engaged in plea discussions and threatened that it would give Stafford a heavier sentence if he exercised his jury-trial right.  The trial court therefore violated Stafford's due-process rights.[4]

{¶ 27} The record demonstrates actual vindictiveness—or at least a presumption of vindictiveness that the state has not rebutted—on the trial court's part.

---

4.  See *Columbus v. Bee* (1979), 67 Ohio App.2d 65, 21 O.O.3d 371, 425 N.E.2d 409.

The right to a jury trial is a foundation of American law. We will not allow it to be infringed. We must vacate Stafford's sentence and remand for resentencing. We do not reverse the finding of guilt, because, even after the threat, Stafford went to trial. If he had pleaded guilty, we would have reversed that finding because of the intimidation. Stafford had his jury trial—but he must not be punished for that choice.

{¶ 28} We therefore sustain Stafford's seventh assignment of error.

### III. The Motion to Amend the Indictment

{¶ 29} In his first assignment, Stafford argues that the trial court should have granted his motion to modify the indictment and his motion in limine to keep his Indiana license suspension out of evidence. Stafford contends that his Indiana license suspension should not have enhanced the penalties for his crimes because such enhancement was proper only when the defendant was suspended under an Ohio law. Stafford is mistaken.

{¶ 30} Stafford does not dispute that his license was suspended under Indiana law. So he bases his argument on the Ohio statutory language and the language in the indictment. Aggravated vehicular homicide is a second-degree felony when the offender was "driving under a suspension imposed under Chapter 4507. of the Revised Coded or any other provision of the Revised Code."[5] And vehicular assault is a third-degree felony "if, at the time of the offense, the offender was driving under a suspension imposed under Chapter 4507. of the Revised Code or any other provision of the Revised Code."[6] The suspension provisions of the Revised Code have since been moved to R.C. Chapter 4510.

{¶ 31} Had Stafford not been driving under suspension, his aggravated-vehicular-homicide charge would have carried a maximum penalty of five years' imprisonment. And the vehicular-assault charges would have been fourth-degree felonies, which would have involved a maximum of 18 months' imprisonment and would not have included a presumptive prison sentence.[7] Had he not been driving under suspension, the most time that Stafford could have spent in prison would have been nine and one-half years. Instead, Stafford faced 23 years, at least some of which was mandatory.[8]

---

5. Former R.C. 2903.06(B)(1)(b), 1999 Am.Sub.S.B. No. 107, 148 Ohio Laws, Part IV, 8699.

6. Former R.C. 2903.08(B)(2), id. at 8702.

7. See R.C. 2929.14(A)(4) and 2929.13(B).

8. Former R.C. 2903.06(C)(2) and 2903.08(C)(2).

{¶ 32} Stafford now argues that an Ohio court—not an Indiana court—had to suspend his driver's license in order for the enhancement to apply. Under the applicable law at the time of the accident, "when a penalty or suspension is enhanced because of a prior or current violation of a specified law or a prior or current specified offense, the reference to the violation of the specified law or the specified offense includes any violation of any substantially equivalent municipal ordinance, former law of this state, or current or former law of another state or the United States."[9] So for the purposes of both aggravated vehicular homicide and vehicular assault, an out-of-state suspension enhanced the penalties.

{¶ 33} Stafford is correct in asserting that an essential-element variance in an indictment can be fatal.[10] But the indictment was not in error concerning an essential element of the crimes, because his Indiana license suspension was also a suspension under Ohio law. The trial court therefore properly denied Stafford's motion to modify the indictment.

{¶ 34} Further, the trial court properly instructed the jury that "[d]riving under a suspension imposed under Chapter 4507 of the Revised Code includes driving under a suspension imposed by a substantially equivalent current or former law of another state."

{¶ 35} We therefore overrule Stafford's first assignment of error.

### IV. Stafford's Statements to the Police

{¶ 36} In his second assignment, Stafford argues that the trial court should have granted his motion to suppress his two statements to the police.

{¶ 37} The first statement, which Officer Toyeas obtained on a recording, was made approximately 45 minutes after the accident. Officer Toyeas and Officer Jerry Lathery asked Stafford a number of questions relating to the accident. Stafford admitted that he had been driving the Kia at the time of the accident. He said that he had started driving near Louisville and that he should never have let Shipman switch places with him. Once Stafford asked to speak to a lawyer, the officers stopped questioning him.

{¶ 38} Stafford made the second statement to Officer Cummins while she was with him in the police scout vehicle. Officer Cummins testified that Stafford had admitted that he had been driving the Kia.

{¶ 39} Stafford now argues that the trial court's failure to suppress these statements violated his Fifth and Sixth Amendment rights under the United

---

9. Former R.C. 2903.06(D)(2) and 2903.08(E).

10. See *State v. Lewis* (1970), 21 Ohio St.2d 203, 50 O.O.2d 441, 257 N.E.2d 59.

States Constitution and Section 10, Article I of the Ohio Constitution. He claims that the trial court should have suppressed the statements because he never received his *Miranda* warnings.[11]

{¶ 40} To trigger the need for *Miranda* warnings, a defendant must be subject to a custodial interrogation.[12] Whether a custodial interrogation has occurred depends on how a reasonable person in the suspect's position would have understood the situation.[13] "[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[14] Determining what constitutes custody for *Miranda* purposes depends on the facts of each case.[15]

{¶ 41} Roadside questioning of a motorist by police, either for a routine traffic stop or because of an accident, is typically not considered a custodial interrogation.[16] But an interrogation conducted inside a police vehicle is usually a custodial interrogation.[17]

{¶ 42} When Officer Toyeas recorded Stafford's statement, they were still on the road near the Kia. Stafford emphasizes the fact that it was a police-dominated atmosphere and that it was not the type of routine interrogation associated with a traffic stop or the average accident. Whether a location is a police-dominated atmosphere is one of the factors to consider when determining whether *Miranda* warnings are necessary.[18]

{¶ 43} But Officer Toyeas testified that, at the time of the recording, the only officers in the vicinity were himself and Officer Lathery. While Officer Toyeas estimated that there were 20 officers at the scene, only two of them were actually questioning Stafford. One of the reasons that a routine interrogation is permitted without *Miranda* warnings following traffic stops and accidents is that it is

---

11. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

12. See *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, citing *Oregon v. Mathiason* (1977), 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714.

13. Id., citing *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317.

14. *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275.

15. Id.

16. *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317.

17. See *State v. Brand*, 157 Ohio App.3d 451, 2004-Ohio-1490, 811 N.E.2d 1156; *State v. Darst* (Sept. 2, 1997), 4th Dist. No. 97 CA 15, 1997 WL 567939.

18. *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317.

conducted in public.[19]   Even though there were many police around the scene, Officer Toyeas interviewed Stafford on a public street.   Even if the car and the surrounding area were cordoned off at the time, all of Officers Toyeas's and Lathery's actions occurred in public.

{¶ 44} Officers Toyeas and Lathery were simply asking Stafford questions about the accident to determine what exactly had happened.   The officers did not place Stafford in handcuffs before or during the questioning.   He was not under arrest when Officer Toyeas questioned him.   Nor was Stafford free to leave the scene because the police had to question him about the accident.[20]   But this was not a custodial interrogation.   The trial court properly denied Stafford's motion to suppress and his motion in limine regarding his recorded statement.

{¶ 45} The statements that Stafford made to Officer Cummins present a closer question.   Routine traffic stops can escalate to the point where they require *Miranda* warnings.[21]   While this was not a traffic stop, the same logic applies.   Officer Cummins did not arrive until after Officer Toyeas had finished questioning Stafford.   Further, Stafford was in the back of the police scout vehicle when he was speaking with Officer Cummins.   Any conversation that Stafford had with Officer Cummins was a custodial interrogation.   Stafford therefore should have been read his *Miranda* rights prior to any questioning.   In fact, Officer Cummins later testified that she did read Stafford his rights.

{¶ 46} The jury heard Officer Cummins's testimony and also heard that she had testified to the contrary in a prior hearing.   The jury had the opportunity to weigh this testimony accordingly and to give it whatever weight it deemed appropriate.

{¶ 47} And any error that may have resulted from Officer Cummins's testimony was harmless.   The same basic statements were already in evidence—in Stafford's own words—because of Officer Toyeas's recording.

{¶ 48} Stafford relies on *State v. Henderson*[22] and *State v. Ham*[23] for the proposition that defendants should be given their *Miranda* rights after serious auto collisions.   But *Henderson* addressed *Miranda* mainly as it related to the nonverbal results of a defendant's breath-alcohol and field-sobriety tests.   And

19.  Id.

20.  See id.

21.  Id.

22.  (1990), 51 Ohio St.3d 54, 554 N.E.2d 104.

23.  (1994), 64 Ohio Misc.2d 20, 639 N.E.2d 529.

*Ham* held that the defendant was not free to go at any time after the accident because it was clear that the defendant had been driving under the influence of alcohol. But, again, a person subject to on-scene investigative questioning following a detention involving a traffic matter is not in custody for the purposes of *Miranda*.[24] That Stafford had been involved in an accident did not change the fact that the officers initially had the right to detain and question him about the accident before actually arresting him.

{¶ 49} At the time that he gave his statement to Officer Toyeas, Stafford was not under arrest, nor had there been a restraint on his freedom of movement to the degree associated with formal arrest. Officer Toyeas was therefore not required to read Stafford his *Miranda* rights at that time. And any problem resulting from Officer Cummins's testimony was, at worst, harmless error.

{¶ 50} We therefore overrule Stafford's second assignment of error.

### V. The Jury's Viewing of the Kia

{¶ 51} In his third assignment, Stafford argues that the jury should not have been allowed to view the Kia. Stafford is incorrect.

{¶ 52} When it is proper, jurors may view the place where a material fact in a crime occurred.[25] And a trial court has broad discretion whether to allow the jury to view the crime scene.[26] Before we can reverse, we must be persuaded that the jury view plainly subjected Stafford to an injustice.[27] A jury view is neither evidence nor a crucial stage in the proceedings.[28]

{¶ 53} Stafford is correct that all evidence must be properly authenticated or identified.[29] But the Kia itself was neither offered as nor admitted into evidence. The trial court specifically instructed the jury that what it saw in the Kia was not evidence. The trial court stated that the only purpose of the jurors' viewing of

---

**24.** *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317; see, also, *Strongsville v. Minnillo*, 8th Dist. No. 80948, 2003-Ohio-162, 2003 WL 125128; *State v. Garland* (1996), 116 Ohio App.3d 461, 688 N.E.2d 557; *State v. Deem* (June 22, 1987), 2d Dist. No. CA86–12–176, 1987 WL 13056.

**25.** R.C. 2945.16.

**26.** *State v. Richey* (1992), 64 Ohio St.3d 353, 595 N.E.2d 915.

**27.** See *State v. Montalvo* (1974), 47 Ohio App.2d 296, 1 O.O.3d 357, 353 N.E.2d 855.

**28.** *State v. Richey* (1992), 64 Ohio St.3d 353, 595 N.E.2d 915, citing *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576.

**29.** See Evid.R. 901.

the Kia was "to help [them] understand the evidence as it was presented in the courtroom."

{¶ 54} While the Kia was not the crime scene itself, it was a place where a material fact occurred—namely, it was where Stafford was located at the time of the accident. Stafford testified that Shipman had forced him to switch seats in the seconds after the accident. A jury view, while not evidence, arguably helped the jury more clearly comprehend Stafford's testimony and the entire case.

{¶ 55} While a jury view usually concerns the actual location of a crime, we cannot say that allowing the jurors to view the Kia was an abuse of the trial court's discretion. Further, Stafford has not demonstrated how the jury's viewing of the Kia prejudiced him in any way, so any error that may potentially have arisen would have been harmless.

{¶ 56} We therefore overrule Stafford's third assignment of error.

## VI. Bias and the Trial Court

{¶ 57} In his fourth assignment, Stafford argues that the trial court denied him his due-process rights because the trial court was biased. We disagree.

{¶ 58} A biased trial court is a structural constitutional error and, if shown, requires reversal without resorting to a harmless-error analysis.[30] A trial court should not engage in plea negotiations.[31] Once it appears on the record that a trial court has participated in plea bargaining, that a tentative sentence has been discussed, and that a harsher sentence has followed a breakdown in negotiations, the record must show that no improper weight was given to the failure to plead guilty and that the trial court sentenced the defendant solely on the facts of his case and his history.[32]

{¶ 59} The trial court did threaten Stafford with the maximum prison term if he did not plead guilty. This was wholly improper. But it did not demonstrate that the trial court was biased against Stafford.

{¶ 60} Stafford also noted that the trial court stated, "I'm trying to envision a defense; one or two things may be possible. I'm having a hard time envisioning a defense." This did not demonstrate the trial court's bias, as it left open the

---

30. *State v. Sanders* (2001), 92 Ohio St.3d 245, 750 N.E.2d 90, citing *Arizona v. Fulminante* (1991), 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302.

31. *State v. Byrd* (1980), 63 Ohio St.2d 288, 17 O.O.3d 184, 407 N.E.2d 1384.

32. *Columbus v. Bee* (1979), 67 Ohio App.2d 65, 21 O.O.3d 371, 425 N.E.2d 409, citing *U.S. v. Stockwell* (C.A.9, 1973), 472 F.2d 1186.

possibility that a defense might exist. Further, the record as a whole contains no indicia of judicial bias.

{¶ 61} Stafford's argument in this regard is more properly couched in terms of a jury-trial issue, which he has done in his seventh assignment of error. But the cure for this situation is not to grant a new trial, and we cannot say that the trial court was biased against Stafford.

{¶ 62} We therefore overrule Stafford's fourth assignment of error.

### VII. Shipman's Statement

{¶ 63} In his fifth assignment, Stafford argues that the trial court erred in admitting Shipman's statement to the police at the scene of the crime. But Shipman's statement was not inadmissible under the hearsay rule.

{¶ 64} When Officer Harris reached the Kia after the accident, he drew his gun and opened the driver-side door. According to Officer Harris, Shipman was in the passenger seat, sweating, with his eyes dilated. Shipman leaned forward and said, "I told his ass to stop." The trial court admitted Shipman's statement as a present sense impression.

{¶ 65} A statement, even if the declarant is available to testify, is not excluded by the hearsay rule under certain circumstances.[33] One such circumstance is when the statement is a present sense impression, which includes a statement describing an event immediately after the event is perceived unless circumstances indicate lack of trustworthiness.[34] Another situation where the hearsay rule does not apply is an excited utterance: a statement relating to a startling event made while the declarant is under the stress of excitement caused by the event.[35] A trial court ordinarily has broad discretion in admitting or excluding evidence.[36]

{¶ 66} Shipman made the statement as soon as Officer Harris arrived at the Kia, which was only a matter of seconds after the accident. He was describing Stafford's actions (or, more accurately, lack thereof) in the Kia. The trial court allowed both sides to argue their cases regarding the admission of this statement at a sidebar. And the trial court properly determined that Shipman's statement could come in as a present sense impression.

---

33. Evid.R. 803.

34. Evid.R. 803(1).

35. Evid.R. 803(2).

36. See State v. Sage (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343.

{¶ 67} Further, Shipman's statement could also have come in as an excited utterance. Officer Harris had his gun drawn. Shipman had just been in a car involved in a serious accident. And he was sweating and his eyes appeared dilated.

{¶ 68} This was not a spur-of-the-moment decision: the trial court held a sidebar conference and discussed the issue with counsel. The prosecutor laid a proper foundation for the admission of this statement as either a present sense impression or an excited utterance. We therefore cannot say that the trial court erred in admitting Shipman's statement.

{¶ 69} Even if Shipman's statement was not an excited utterance or a present sense impression, its admission would have been harmless error. For trial purposes, Shipman's statement only served to identify Stafford as the Kia's driver. But there was substantial evidence that already put Stafford in the driver's seat at the time of the accident, including Stafford's own statements and Officer Harris's testimony that Stafford was in the driver's seat when he reached the Kia.

{¶ 70} We therefore overrule Stafford's fifth assignment of error.

## VIII. Sufficiency and Weight of the Evidence

{¶ 71} In his sixth assignment, Stafford argues that his conviction was unsupported by sufficient evidence and against the manifest weight of the evidence. Stafford is wrong.

{¶ 72} In reviewing a record for sufficiency, we must determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution.[37]

{¶ 73} A review of the manifest weight of the evidence puts the appellate court in the role of a thirteenth juror.[38] The court must weigh the evidence, consider the credibility of witnesses, and determine whether the trier of fact lost its way in finding the defendant guilty. A new trial should be granted on the weight of the evidence only in exceptional cases.[39] And "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause."[40]

---

**37.** *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

**38.** *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

**39.** Id., citing *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717.

**40.** Section 3(B)(3), Article IV, Ohio Constitution.

{¶ 74} The jury found Stafford guilty of four crimes: the second-degree-felony aggravated vehicular homicide of Asbrock and the three third-degree-felony vehicular assaults on Williams, Fields, and Officer Harris.

{¶ 75} A person is guilty of second-degree-felony aggravated vehicular homicide when he operates or participates in the operation of a motor vehicle while driving under a suspension and recklessly causes the death of another.[41]

{¶ 76} A person is guilty of third-degree-felony vehicular assault when he operates or participates in the operation of a motor vehicle while driving under a suspension and recklessly causes serious physical harm to another.[42]

{¶ 77} The first element of all four counts was that Stafford was operating or participating in the operation of the Kia. Officer Harris witnessed Stafford in the driver's seat, pushing on the brake with his hands, moments after the accident. And Stafford admitted that he had been driving the Kia.

{¶ 78} The state also had to prove that Stafford was driving under a suspension under R.C. Chapter 4507. As we have already discussed, Stafford's Indiana license suspension was effective as a suspension under R.C. Chapter 4507 for the purposes of these crimes. Again, Stafford did not contest that his license was under suspension in Indiana.

{¶ 79} Further, the state had to show that Stafford was operating the Kia recklessly. The record shows that Stafford did not have the use of his legs. While he had been licensed to drive prior to his suspension, his license required that he drive a vehicle equipped with specific adaptations that would allow him to drive without using his legs. The Kia did not have any such adaptations. While driving the Kia, Stafford was unable to stop, ran a red light, and plowed through a crowd of people.

{¶ 80} Asbrock died as a result of his injuries. Williams went into a coma and had to undergo significant rehabilitation. Fields suffered a badly broken leg. And Officer Harris injured his wrist, which still occasionally required pain medication more than a year after the accident.

{¶ 81} Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of all four crimes proved beyond a reasonable doubt. Stafford's conviction was therefore not against the sufficiency of the evidence.

{¶ 82} We have reviewed the entire record, weighed the evidence, and considered the credibility of the witnesses. And we cannot say that the jury lost its

---

41. Former R.C. 2903.06.

42. Former R.C. 2903.08.

way or created a manifest miscarriage of justice in finding Stafford guilty. Stafford was driving the Kia recklessly simply by the fact that he was driving it at all. His license had been in effect suspended. And all of the victims suffered the unfortunate statutory harm required for a conviction. The only question of fact that was really in doubt was whether Officer Harris's wrist injury was "serious physical harm." But, again, having reviewed the record, we cannot say that this determination indicated that the jury lost its way. Stafford's conviction was not against the manifest weight of the evidence.

{¶ 83} We overrule Stafford's sixth assignment of error.

{¶ 84} Accordingly, we affirm the jury and the trial court's guilty finding and judgment, but we vacate the sentence and remand the cause for resentencing in accordance with law.

{¶ 85} Because the original trial judge has left the bench, Stafford will be sentenced by a different judge.

Judgment affirmed in part,
sentence vacated,
and cause remanded.

WINKLER, P.J., and HILDEBRANDT, J., concur.