DECISION. *Page 2 
{¶ 1} The state of Ohio appeals the trial court's judgment that granted Demetrius Davis's motion to suppress. We conclude that the trial court erred when it granted the motion, and we therefore reverse the judgment of the trial court.
 {¶ 2} On November 10, 2006, around midnight, three police officers on bicycles stopped Davis for suspicion of jaywalking. According to Officer Christian Campo, he and his partner asked Davis for his identification. When Davis provided his name, the officers recognized it as the name of a confidential informant who was working with another officer. According to Officer Campo, the officers patted Davis down to ensure their safety. Nothing was discovered during the pat-down. Officer Campo testified that, as the officers checked Davis's information, they asked him "basic investigative questions, like you know, where, what he was doing, and what was going on with his other case." The officers also asked Davis if he had a vehicle and if he had anything in his car. According to Officer Campo, Davis indicated that his car was parked about a block away and that there were drugs in the car.
 {¶ 3} Officer Campo testified that after Davis had told the officers that there were drugs in his car, Officer Campo advised him of his rights and started to ask specific questions. Officer Campo testified that Davis had given Officer Campo his car keys, and that Officer Campo had gone to look for the car. After Officer Campo had located the car, he found a large amount of crack cocaine in it.
 {¶ 4} Davis was indicted for one count of trafficking in cocaine and one count of possession of cocaine. He filed a motion to suppress his statement made to the police officers and the crack cocaine that was found in his car. After a hearing, the trial court granted the motion. *Page 3 
 {¶ 5} In its sole assignment of error, the state now asserts that the trial court erred when it granted the motion to suppress. Our review of the trial court's decision to grant Davis's motion to suppress involves a mixed question of law and fact.[1] We must accept the court's findings of fact if they are supported by competent, credible evidence.[2] But we review the application of the law to the facts de novo.[3]
 {¶ 6} Police officers are required to advise a person of hisMiranda rights when the person is subjected to a custodial interrogation.[4] Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[5] There is no bright-line test for determining whether a person has been subjected to custodial interrogation. Rather, courts must look at the circumstances to determine "how a reasonable man in the suspect's position would have understood his situation."[6] "The ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"[7]
 {¶ 7} Although there is no bright-line test for determining whether a custodial interrogation has occurred, decisions from other courts inform our inquiry. In State v. Martin, the Second Appellate District considered the questioning of a woman who had been stopped for jaywalking.[8] The court concluded that Martin had not been subject to a custodial stop, even though she was placed in a police cruiser and was asked questions that were not germane to the jaywalking citation.[9]
The *Page 4 
court stated, "While [the police officer's questioning] may have been inappropriate, it did not convert an investigative stop into a formal arrest or a restraint on Martin's freedom of the degree commonly associated with an arrest."[10]
 {¶ 8} In Martin, the Second Appellate District analogized a jaywalking stop to a traffic stop.[11] In Berkemer v. McCarty, the United States Supreme Court recognized that aspects of a traffic stop reduce the risk that a person will be induced to speak involuntarily.[12] The court pointed to the temporary and brief nature of a traffic stop and contrasted it to "stationhouse interrogation, which frequently is prolonged, and in which the detainee is often aware that questioning will continue until he provides his interrogators the answers they seek."[13] The second feature is that the "circumstances with the typical traffic stop are not such that the motorist feels completely at the mercy of the police[,]" especially since the stop is made in public.[14]
 {¶ 9} Acknowledging the decision in Berkemer, the Ohio Supreme Court has held that a defendant was subject to custodial interrogation after being stopped for a traffic violation, where police officers patted him down, took his car keys, placed him in a police cruiser, and told him they were going to search his car because they smelled marijuana.[15]
"Farris was not free to leave the scene — he had no car keys and reasonably believed that he would be detained at least as long as it would take for the officer to search his automobile. * * * We hold that a reasonable man in Farris's position would have understood himself to be in custody of a police officer as he sat in a police cruiser."[16] *Page 5 
 {¶ 10} This court considered both Berkemer and Farris in our decision in State v. Leonard.[17] There, we concluded that Leonard, who had been stopped on suspicion of excessive window tinting, had not been subjected to a custodial interrogation, where the police officers did not pat him down or take his keys before placing him in a patrol car for a short time.[18]
 {¶ 11} With these cases in mind, we consider the circumstances surrounding the stop and the questioning of Davis. As inMartin, the stop was initially a jaywalking stop. But since the officers were bicycle officers, Davis was not placed into a police cruiser. The duration of the stop was relatively short: Officer Campo testified that the questioning of Davis lasted anywhere from three to ten minutes. The stop occurred on a public street, albeit late at night. Davis was unable to leave while the police officers decided whether to cite him for jaywalking. But because the officers had not taken his car keys, it was reasonable for Davis to believe that he would be free to leave after the decision was made. We conclude that, under the totality of the circumstances, a reasonable person in Davis's situation would not have understood himself to have been in the custody of the police officers when Davis stated that he had drugs in his car. The sole assignment of error is sustained.
 {¶ 12} We therefore reverse the judgment of the trial court and remand the cause for further proceedings consistent with the law.
Judgment reversed and cause remanded.
Cunningham and Dinkelacker, JJ., concur.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8.
[2] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583.
[3] Id., citing State v. McNamara (1997), 124 Ohio App.3d 706,707 N.E.2d 539.
[4] Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602.
[5] Id.
[6] Berkemer v. McCarty (1984), 468 U.S. 420, 442,104 S.Ct. 3138.
[7] California v. Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, citing Oregon v. Mathiason (1977), 425 U.S. 495, 97 S.Ct. 711.
[8] 2d Dist. No. 19186, 2002-Ohio-2621.
[9] Id. at ¶ 35.
[10] Id.
[11] Id.
[12] Berkemer, supra, at 437-438.
[13] Id. at 438.
[14] Id. See, also, State v. Stafford, 158 Ohio App.3d 509,2004-Ohio-3893, 817 N.E.2d 411.
[15] State v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255,849 N.E.2d 985.
[16] Id. at ¶ 14.
[17] 1st Dist. No. C-060595, 2007-Ohio-3312.
[18] Id. at ¶ 22. *Page 1