[Cite as *State v. Alexander*, 2012-Ohio-460.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110035 |
| | | TRIAL NO. B-0904637 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| CHRISTOPHER ALEXANDER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 10, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,*
Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein and Thurman, L.P.A.,* and *Scott A. Rubenstein,* for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}     Defendant-appellant Christopher Alexander appeals the judgment of the Hamilton County Court of Common Pleas convicting him of aggravated murder, murder, attempted murder, and aggravated robbery, with firearm specifications.  He was convicted after a jury trial.

{¶2}     This case involves shootings that caused the deaths of Mark Davenport and Kenneth Gaines and that resulted in serious injuries to Ruben Willis.  The state alleged that the crimes were perpetrated by Alexander and his accomplice Gerald Wilson.

### A Feud Over $200

{¶3}     Alexander and Davenport had a simmering feud over $200 in drug money.  That dispute came to a head in July 2009.

{¶4}     Johanna Sadler was Davenport's live-in girlfriend.  She testified that on the night before the shootings, Davenport had received a telephone call.  After the telephone conversation had ended, Davenport told her that the caller was Alexander and that Alexander had told him that he better enjoy his last day because he was going to kill him.

{¶5}     The next day, Ruben Willis was standing with Davenport in front of Davenport's house when a car approached.  Willis testified that Alexander had been driving the car and that he had pointed his finger at them as if he were firing a gun.

{¶6}     Wilson testified that Alexander had called to enlist him in what Alexander described as a robbery.  Wilson assented, and the two approached Davenport's house, with Alexander carrying a gun.

{¶7}     Davenport, Gaines, and Willis were standing in front of Davenport's house.  According to Wilson, Alexander opened fire in the direction of

the three men. A bystander testified that he had seen Alexander and Wilson flee and that Alexander had been carrying a gun.

{¶8}     When police arrived, Davenport and Gaines had been fatally wounded, and Willis had suffered serious leg injuries. The police observed that Davenport's pants pockets had been turned inside out as if someone had reached into them to take the contents.

{¶9}     Alexander turned himself in. In response to interrogation, Alexander confessed that he had been involved in the crimes. But according to Alexander, he had intended to merely rob Davenport. He maintained that Wilson had possessed the gun and that he had fired the shots despite Alexander's attempts to restrain him.

{¶10}     Eric Kleinholz was incarcerated in the Hamilton County Justice Center with Alexander. Kleinholz testified that Alexander had told him that he had shot someone in a dispute over $200.

{¶11}     Tamela Scott took the stand for the defense and stated that she had dropped Alexander and Wilson off near the scene of the shootings and had picked them up later in the day. She also testified about a confrontation between Alexander and Davenport before the shootings. Scott did not witness the shootings and was unable to remember details about what had happened after she had driven Alexander and Wilson from the area.

{¶12}     The jury found Alexander guilty, and the trial court sentenced him to prison terms of life without the possibility of parole for aggravated murder, 15 years to life for murder, and two consecutive ten-year terms for attempted murder and aggravated robbery, as well as two consecutive three-year terms for the firearm specifications.

**Admissibility of Alexander's Statement to Police**

{¶13} In his first assignment of error, Alexander argues that the trial court erred in overruling his motion to suppress the confession he made to police soon after the shootings. He argues that the confession was coerced and therefore inadmissible.

{¶14} In a hearing on a motion to suppress a confession, the prosecution must prove by a preponderance of the evidence that the confession was voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The Supreme Court of Ohio has stated that in deciding whether a defendant's confession is involuntarily induced "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus. Coercive police activity is a necessary predicate to a finding that the admission of a confession would violate the defendant's due-process rights. *State v. Cedeno*, 192 Ohio App.3d 738, 2011-Ohio-674, 950 N.E.2d 582 (1st Dist.), ¶ 17, citing *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), and *State v. Combs*, 62 Ohio St.3d 278, 285, 581 N.E.2d 1071 (1991).

{¶15} In the case at bar, Alexander has failed to demonstrate any coercion or other impropriety on the part of the investigating officers. The interrogation lasted no more than two hours. During the interrogation, Alexander was permitted to take a break to smoke a cigarette, and he was provided with food. Alexander expressed the desire to tell his version of the events, and there was no indication that the officers placed undue pressure on him to talk. Under these

circumstances, the trial court correctly denied the motion to suppress, and we overrule the first assignment of error.

**Admissibility of Davenport's Statement**

{¶16} In his second assignment of error, Alexander contends that the trial court erred in admitting into evidence the statement that Davenport had made to Johanna Sadler on the night before he was killed. Alexander argues that the statement was inadmissible hearsay, while the state maintains that the statement was admissible as a present sense impression.

{¶17} A trial court generally has broad discretion in admitting or excluding evidence. *State v. Stafford,* 158 Ohio App.3d 509, 2004-Ohio-3893, 817 N.E.2d 411 (1st Dist.), ¶ 65, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Evid. R. 803 provides for the admissibility of certain statements, regardless of the availability of the declarant. One such type of statement is a "present sense impression," defined as a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid. R. 803(1); *Stafford* at ¶ 65.

{¶18} In this case, the trial court did not abuse its discretion in admitting the statement. Sadler's testimony indicated that Davenport had repeated Alexander's threat from the telephone call immediately after the conversation had ended. Davenport had no time to reflect or to fabricate the substance of the conversation, and there was no indication that his statement was otherwise unreliable. Thus, the statement was properly admitted, and we overrule the second assignment of error.

**Prosecutorial Misconduct**

{¶19}    In his third assignment of error, Alexander argues that he was prejudiced by prosecutorial misconduct.

{¶20}    He first argues that improper comments by the prosecutor during closing arguments deprived him of a fair trial.  He cites as improper the prosecutor's statement that the jury should not "let one of the killers walk away here."

{¶21}    To obtain a reversal on the ground of improper remarks made during closing argument, the defendant must demonstrate not only that the comments were improper, but also that they deprived the defendant of a fair trial. *State v. Seay,* 1st Dist. No. C-090233, 2010-Ohio-896, ¶ 23.

{¶22}    In the case at bar, we find no impropriety in the prosecutor's comment.  In the context of the argument, the prosecutor simply emphasized that Alexander could not overcome the overwhelming evidence of his guilt by merely pointing the finger at Wilson.  The prosecutor did not appeal to the passions of the jury and did not misstate the law or the evidence.  Accordingly, we cannot say that the comment deprived Alexander of his right to due process.

{¶23}    Alexander also argues that the prosecutor engaged in misconduct by misstating the testimony of a witness.  But Alexander does not specifically identify the testimony that was allegedly mischaracterized, and we find nothing in the record to indicate that the state improperly commented on the evidence.

{¶24}    Finally, Alexander argues that the state violated Crim.R. 16 in failing to provide the defense with photographs of spent shell casings.  We find no merit in this argument.  At trial, the state contended that it had in fact provided the photographs to Alexander, and there is nothing in the record other than the assertions of counsel to indicate that the state had withheld any evidence.   In any event, the trial court permitted defense counsel to review the photographs before

cross-examining the state's witness, and Alexander has thus demonstrated no prejudice that resulted from the state's alleged discovery violation. We overrule the third assignment of error.

**Weight of the Evidence**

{¶25} In his fourth assignment of error, Alexander argues that his convictions were against the manifest weight of the evidence.

{¶26} To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶27} R.C. 2903.01(A), governing aggravated murder, provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *. The murder statute, R.C. 2903.02(B), provides that "[n]o person shall cause the death of another as the proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The attempt statute, R.C. 2923.02(A), states that "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The aggravated-robbery statute, R.C. 2911.01(A)(1), states that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶28}     In this case, the convictions were in accordance with the evidence. The state presented evidence that Alexander had shot Davenport, Gaines, and Willis and that the first two had died from their injuries.  With respect to Davenport, the state demonstrated that Alexander had killed him with prior calculation and design and that he had gone through Davenport's pockets in an attempt to steal from him.

{¶29}     Alexander contends that he had merely intended to rob Davenport and that Wilson had caused the confrontation to escalate.  But that contention was refuted by the witnesses who testified about threats that Alexander had made and by the testimony of the bystander who had seen Alexander fleeing with a gun in his hand.  We cannot say that the jury lost its way in finding Alexander guilty, and we overrule the fourth assignment of error.

### Jury Instruction on Complicity

{¶30}     In the fifth assignment of error, Alexander argues that the trial court erred in instructing the jury on complicity.  He maintains that because the state tried the case on the theory that he was the principal offender, the evidence did not support an instruction on complicity.

{¶31}     A person who violates R.C. 2923.03 by aiding and abetting another, conspiring with another, or soliciting another to commit an offense, "is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.  A charge of complicity may be stated in terms of this section, or in terms of the principal offense."  R.C. 2923.03(F).  Thus, if the evidence permits, a defendant is deemed to be on notice that he can be convicted as a principal offender or as an accomplice under R.C. 2923.03(F).  *State v. Harrington,* 1st Dist. Nos. C-080547 and C-080548, 2009-Ohio-5576, ¶ 12.  And where the state presents evidence that the defendant had acted in concert with

another to commit a crime, a jury instruction on complicity is proper. *See State v. Smith,* 1st Dist. Nos. C-080712 and C-090505, 2009-Ohio-6932, ¶ 33.

{¶32}     In this case, the trial court did not err in providing an instruction on complicity.  The evidence presented by the state demonstrated that Alexander had acted in concert with Wilson in committing the crimes.  Moreover, in Alexander's own statement to police, he admitted that he and Wilson had acted in concert, maintaining that Wilson had been the principal offender.     Under these circumstances, the instruction on complicity was warranted, and we overrule the fifth assignment of error.

### Allied Offenses of Similar Import

{¶33}     In his sixth assignment of error, Alexander argues that the trial court erred in imposing sentences for both aggravated murder and aggravated robbery.  Specifically, he argues that the offenses were allied offenses of similar import because the aggravated murder was committed merely to effectuate the aggravated robbery.

{¶34}     Under R.C. 2941.25, a trial court may sentence a defendant for two or more offenses arising from the same criminal conduct or transaction if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense.  *See State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 51; *State v. Baron,* 1st Dist. No. C-100474, 2011-Ohio-3204, ¶ 17.

{¶35}     In this case, the trial court did not err in sentencing Alexander for both offenses, as the state demonstrated a separate animus for each.  Alexander had planned to kill Davenport well in advance of the aggravated robbery, as reflected by the threats he had made on the telephone and by the threatening gesture he had made toward Davenport.  The intent to kill was thus separate from the motive for the

aggravated robbery. Accordingly, multiple sentences were proper, and we overrule the sixth assignment of error.

## Removal of Prospective Juror

{¶36} In the seventh assignment of error, Alexander argues that the trial court erred in removing a prospective juror for cause.

{¶37} A prospective juror who indicates that she cannot be fair and impartial or that she will not follow the law may be removed for cause. R.C. 2313.42(J). The decision to remove a prospective juror for cause is within the discretion of the trial court. *State v. McGlothin,* 1st Dist. No. C-060145, 2007-Ohio-4707, ¶ 10, citing *Berk v. Matthews,* 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990), syllabus.

{¶38} In the case at bar, the trial court did not abuse its discretion. The prospective juror in question stated that she did not feel comfortable sitting in judgment of others and that she therefore could not render a verdict in accordance with the law. Although the juror vacillated somewhat in her answers to the court, her final response indicated that she could not faithfully discharge the duties of a juror. The trial court was correct in removing her from the jury for cause, and we overrule the seventh assignment of error.

## Denial of Motion for a New Trial

{¶39} In his eighth and final assignment of error, Alexander argues that the trial court erred in overruling his motion for a new trial based on alleged misconduct of a defense witness. In support of his argument, Alexander cites evidence in the record that a spectator at the trial had violated the court's order requiring separation of witnesses by revealing to Tamela Scott the testimony of other witnesses.

{¶40} The decision to grant or deny a new trial under Crim.R. 33 is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Gaines,* 1st Dist. No. C-110145, 2011-Ohio-6719, ¶ 34.

{¶41} Here, there was no abuse of discretion. Alexander bases his argument on R.C. 2945.79(B), which provides that "[a] new trial, after a verdict of conviction, may be granted on the application of the defendant for any of the following causes affecting materially his substantial rights: * * * [m]isconduct of the jury, prosecuting attorney, or *the witnesses for the state.*" (Emphasis added.) *See also* Crim.R. 33(A)(2).

{¶42} In the instant case, Alexander argues that a *defense* witness had engaged in misconduct. Such misconduct is not one of the statutory bases for the granting of a new trial, and Alexander has failed to show that he was prejudiced by the alleged impropriety. Accordingly, we overrule the eighth assignment of error.

### Conclusion

{¶43} The judgment of the trial court is affirmed.

*Judgment affirmed.*

**DINKELACKER** and **FISCHER, JJ.,** concur.

Please note:

   The court has recorded its own entry this date.

11