[Cite as *State v. Syph*, 2021-Ohio-3504.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-20-1018

      Appellee                              Trial Court No. CR0201901338

v.

Adrian Syph                                    **DECISION AND JUDGMENT**

      Appellant                             Decided:  September 30, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Adrian Syph, appeals the nunc pro tunc judgment entered by the

Lucas County Court of Common Pleas on January 15, 2020, sentencing him to a term of

four years in prison for burglary, and a term of 17 months in prison for menacing by

stalking, with the sentences ordered to be served concurrently. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} In this appeal, appellant raises the following four assignments of error:

Error I: The trial court erred in not applying the statutory 3 days for each day in custody calculation and thereby denying Mr. Syph's *unopposed* Motion to Dismiss on statutory speedy trial grounds when such motion was made after he had been in custody for over 90 days, and engaged in further continuances which denied Mr. Syph his right to a speedy trial under the Ohio and United States Constitutions.

Error II: The trial court committed prejudicial error at trial when it excused a juror for cause, over defendant's objection, based upon statements attributed to the potential juror which are not supported by the record.

Error III: The convictions are against the manifest weight of the evidence.

Error IV: The trial court, by involving itself in the plea negotiations, by stating that, in regard to a plea, "differences in time and sentencing -- at sentencing the potential for a lengthy sentence versus a non-lengthy sentence. . .", by ordering a competency evaluation because Mr. Syph supposedly did not understand the differences in sentencing between a plea and a trial, and by then sentencing Mr. Syph to a "lengthy" sentence,

2.

created a presumption of vindictiveness in its sentence, and said sentence is void. See, *e.g.*, *State v. Stafford*, 158 Ohio App.3d 509, 2004-Ohio-3893, 817 N.E.2d 411, ¶ 24 (1st Dist.).

## Statement of the Case

{¶ 3} **Indictment.** On February 25, 2019, in case No. CR 19-1338 ("Case 1"), the Lucas County Grand Jury indicted appellant on two counts of burglary, and one count of menacing by stalking. The menacing by stalking charge stemmed from allegations that throughout a two-month period, appellant engaged in a pattern of conduct that caused victim E.B. to fear for her safety. The burglary charges stemmed from allegations that on two separate occasions, first on or about December 29, 2018 and then, again, on or about January 5, 2019, appellant broke into her home. On March 4, 2019, in case No. CR 19-1377 ("Case 2"), the grand jury indicted appellant on an additional count of burglary. This charge stemmed from allegations that on or about January 4, 2019, appellant broke into the home of E.B.'s next door neighbor F.S.

{¶ 4} **Motion to Dismiss.** On June 4, 2019, appellant filed a motion to dismiss both cases based on a violation of his statutory right to a speedy trial. He argued that because he had been incarcerated during the pendency of the proceedings, the triple-count provision of the speedy trial statute applied and, thus, the state was required to bring him to trial within 90 days of arrest. He further argued that he had been incarcerated for 109 days. At a pretrial hearing held on the same day, the trial court

3.

asked the parties to approach the bench and held a discussion off the record. The court then stated:

> We had a conference with Judge English here prior to coming on the record, and there was some discussion regarding defense -- defendant has filed a couple motions this morning, two motions to dismiss alleging that we are out of time. There was some calculation as to the time based upon the multiple charges that have been filed here, and determination has been made that in fact contrary to what the motions to dismiss allege, the State has 188 days yet to prosecute on CR 19-1377, and 146 days left under case number CR 19-1338.

The trial court thus denied appellant's motions.

{¶ 5} **Voir Dire.** On October 29, 2019, a jury trial commenced, with the charges in the two cases tried together. During voir dire, defense counsel asked each prospective juror if they felt they could act as a fair and impartial juror in the case. Juror No. 11 stated that she did not know if she could, because approximately 20 years ago, a woman had falsely accused her son of participating in a robbery at a local convenience store. She explained that surveillance cameras at the store eventually proved his innocence. She then asserted that if it had not been for the cameras, her son would be in prison. Defense counsel subsequently asked each prospective juror if they would want themselves to sit as a juror if they had been the accused in this case. When he reached Juror No. 11, before

4.

getting an answer to his initial question, he said, "You told us about the past, is that in your head?" She responded in the affirmative.

{¶ 6} At the close of voir dire, the state moved the trial court to excuse Juror No. 11 for cause because she was the only person to indicate that she did not know if she could act as a fair and impartial juror. Defense counsel objected and argued that even though she struggled with the issue, he felt that she could still act as a fair and impartial juror. The trial court responded that "she seemed to be pretty adamant the second time she was asked about her ability to be fair, and I didn't take that as unfair to just one side, but just her inability to get over the situation that involved her son." The court thus granted the state's challenge for cause and excused Juror No. 11 from the jury.

{¶ 7} **Conviction and Sentence.** At the conclusion of the evidence, the jury found appellant guilty of the menacing by stalking charge and of the first count of burglary in Case 1, but not guilty of the remaining charges. After accepting the jury's verdict, the trial court ordered a presentence report and set the matter for sentencing. At the scheduled sentencing hearing, the court noted that appellant had filed a pro se notice of appeal regarding the denial of his motion to dismiss. Although both the court and defense counsel explained that he could not yet appeal the issue, appellant refused to withdraw that notice of appeal. The court then noted that it did not have jurisdiction to proceed to sentencing and, therefore, it continued the matter.

5.

{¶ 8} After this court dismissed the pro se notice of appeal, the matter proceeded to sentencing December 19, 2019.  The trial court sentenced appellant to a term of four years in prison on the burglary charge and to 17 months in prison on the menacing by stalking charge, to be served concurrently, for a total sentence of four years in prison.  The trial court subsequently issued a nunc pro tunc entry to correct a typographical error.  This appeal followed.

### Statement of Facts

{¶ 9} **The Menacing by Stalking Charge.**  In November of 2018, then 22-year old E.B. lived alone with her dog, at 326 Champion Street, in Toledo Ohio, and she worked the night shift at a nursing home in Monroe, Michigan.  After she completed her shift on the morning of November 2, she went to her mother's house and slept for a few hours.  When she returned home that afternoon, appellant stopped her on the street and introduced himself.  At his request, E.B. gave him her phone number and then went inside.  That afternoon, appellant and E.B. started to text back and forth, but once E.B. discovered that appellant was around the same age as her father, she told him that he was too old for her.  Appellant pushed the issue, but she ultimately told him that she was not interested in anything other than a basic friendship.

{¶ 10} After the initial conversation, appellant continued to text E.B. periodically, with compliments and casual chat.  E.B. did not want to talk to him, so she started to ignore him, with the hope that he would eventually give up.  He continued to text her, however, and on two occasions he showed up at her house unannounced, in the middle of

6.

the afternoon, and rang the doorbell. Although E.B. did not open the door, she knew that it was appellant, because he texted her later and asked why she had not answered the door.

{¶ 11} On December 4, 2018, E.B. had the night off from work, and she decided to go out to get some food. She remotely started her car from inside her home, and then began to get dressed. Almost immediately, she heard a knock on her door. She became scared, because she thought that someone had been expecting her to come out of the house. She waited for approximately 10 to 15 minutes, and then looked outside. She did not see anyone, so she thought that whoever it was had left. When she went outside, appellant began cat calling her from her neighbor's porch across the street. He said that she could not ignore him. E.B. hurried to her car and left to pick up her food. On the drive home, she saw appellant walking away from her block. She did not think that he saw her. When she returned home, she texted him and told him that she was going to call the police if he did not stop harassing her. Appellant responded by texting her numerous threats.

{¶ 12} At trial, the state introduced a printout of the text messages that were in E.B.'s cell phone. The printout depicted the initial text conversation between the two, during which appellant expressed his interest and E.B. responded that she did not wish to pursue a relationship with him. The printout also depicted the text conversation that occurred after appellant showed up unexpectedly at her house, on the night of December 4. It showed that E.B. told appellant to leave her house and that he responded by sending

7.

numerous threatening text messages. In one text message, appellant stated, "Ill catch you slippn comin in at night." E.B. testified that she thought he meant that he was going to beat her up. In another, he stated, "I could've text you with a picture of a big black sticc and beat your ass and give it to you." E.B. testified that she thought that this meant that he was going to beat her up and rape her.

{¶ 13} **The First Burglary Charge.** On December 29, 2018, E.B. returned home and discovered that the window in her back door was broken and that there was glass everywhere. She immediately called 911, and then waited in her car until officers arrived. After the officers confirmed that there was no one in the house, E.B. went inside and found that numerous electronics were missing. Shortly thereafter, E.B.'s mother arrived and noticed a note on the refrigerator that said "Merry Christmas" and had a smiley face on it. E.B. testified that the note had not been there before she went to work the previous night. She immediately thought that the note was from appellant, because it was very similar to a text message that he had sent her four days before. Text messages that were later discovered on appellant's cell phone demonstrated that he was attempting to sell the same kind of electronics that had been stolen from E.B.'s house.

{¶ 14} **The Second Burglary Charge.** After the first burglary, E.B. did not feel safe in her own home, so she packed up several of her belongings and went to stay with her mother, in Monroe, Michigan. She still considered the house in Toledo to be her home, however, and she came back periodically to check on it. On January 5, 2019, the police contacted her to inform her that the house had been broken into a second time.

8.

The perpetrator had not taken anything from the house, but had turned up the thermostat and had defecated in the toilet without flushing. E.B.'s next-door neighbor, F.S., had been the one to contact police. F.S. thought E.B.'s house was vacant, because he never met E.B. and did not know that she was living there. He reported that he had seen a man inside the home. He was clearly able to see the man's face through the window, and, ultimately, he identified appellant as the suspect.

{¶ 15} **The Third Burglary Charge.** One day before F.S. contacted the police to report the second burglary, he returned home and discovered two broken windows and a bloodstain on one of the walls near the broken windows. The perpetrator had taken a U.S. Treasury check, had turned up the thermostat approximately 15 degrees, and had left the back door unlocked. A sample from the blood that was found on the wall was tested and was found to be consistent with appellant's DNA, with a one in one trillion chance of finding the same DNA profile in the general population.

## Argument

### I. The trial court properly denied appellant's motions to dismiss on speedy trial grounds.

#### A. The state adequately responded to appellant's motions to dismiss.

{¶ 16} In his first assignment of error, appellant claims that the trial court violated his constitutional and statutory rights to a speedy trial when it denied his motions to dismiss in the above-referenced cases. At the outset, appellant asserts that although his motions to dismiss put forth a prima facie showing that his statutory speedy trial time had

elapsed, the record contains no evidence of rebuttal from the state. Regarding Ohio's statutory speedy trial procedures, the Fourth District Court of Appeals, in *State v. Whitt*, 4th Dist. Scioto No. 04CA2962, 2005-Ohio-5154, ¶ 10, stated:

> A defendant presents a prima facie case for discharge under [R.C. 2945.73] by alleging that he was held in jail solely on the pending charge and then demonstrating that the state failed to bring him to trial within the limits imposed by the triple-count provision. See *State v. Butcher* (1986), 27 Ohio St.3d 28, 30–31, 500 N.E.2d 1368. Once the defendant has established a prima facie case, the burden of proof shifts to the state to show that the R.C. 2945.71 time limitations have not expired. See *Id.* at 31, 500 N.E.2d 1368. The state satisfies this burden by demonstrating either (1) that the time was extended by R.C. 2945.72, which sets forth events that toll the speedy-trial time limit, or (2) that the defendant is not entitled to use the triple-count provision in R.C. 2945.71(E). See *State v. McGhee,* Lawrence App. No. 04CA15, 2005–Ohio–1585, at ¶ 39, citing *Butcher,* supra. See, also, *State v. Eldridge,* Scioto App. No. 02CA2842, 2003–Ohio–1198, at ¶ 6; *State v. Green,* Ross App. No. 01CA2641, 2002–Ohio–3403, at ¶ 10**.** If the state fails to produce evidence to rebut the defendant's prima facie case, then the court must discharge the defendant. See *State v. Price* (1997), 122 Ohio App.3d 65, 68, 701 N.E.2d 41, citing *Butcher,* supra.

10.

{¶ 17} In his motions to dismiss, filed on June 4, 2019, appellant presented the following argument:

Now comes defendant Adrian Syph ("Syph"), through counsel, and asks this Court to dismiss this case pursuant to R.C. 2945.71 (C)(2) and (E) which states in relevant part: (C) A person against whom a felony is pending: (2) Shall be brought to trial within two hundred seventy days after the person's arrest. (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted a three days…

Here, Syph was arrested on February 15, 2019. On March 5, 2019, the Court found Syph not indigent and continued his arraignment for March 12, 2019. On March 12, 2019, counsel was appointed, and a trial date was set for May 14, 2019. On May 14, 2019, the State of Ohio was granted a continuance of the trial date until June 4, 2019. Syph objected to this continuance.

Calculating Syph's in custody days amounts to 109 days in custody from February 15, 2019 to June 4, 2019. Even subtracting the seven days between March 5, 2019 and March 12, 2019, results in 102 days in custody, a violation of R.C. 2945.71.

11.

{¶ 18} In requesting discharge on speedy trial grounds and in demonstrating that a trial did not occur within the speedy trial time limits, appellant clearly made a prima facie case for discharge. *See State v. Howerton*, 2021-Ohio-913, 168 N.E.3d 861, ¶ 12 (4th Dist.). The burden then shifted to the state to show either (1) that the time was extended by R.C. 2945.72, which sets forth events that toll the speedy-trial time limit, or (2) that the defendant is not entitled to use the triple-count provision in R.C. 2945.71(E). *Whitt* at ¶ 10. Appellant correctly points out that the record does not contain any response from the state to his motion to dismiss.

{¶ 19} The state, on appeal, proffers the following explanation:

Syph filed his motion to dismiss on the morning of June 4, 2019. On the same day, the matter was called for a scheduled trial date. The trial court immediately asked the parties to approach the bench and held a discussion off the record. When the matter resumed, the court explained that the off-the-record discussion had related to the motion to dismiss and then decided the motion. Based on the time of his filing, the State did not have the opportunity to file a written opposition to the motion. However, it is likely that the prosecutor responded to the motion during the off-the-record discussion.

{¶ 20} Following the above-referenced off-the-record discussion, the trial court stated:

12.

We had a conference with Judge English here prior to coming on the record, and there was some discussion regarding defense -- defendant has filed a couple motions this morning, two motions to dismiss alleging that we are out of time. There was some calculation as to the time based upon the multiple charges that have been filed here, and determination has been made that in fact contrary to what the motions to dismiss allege, the State has 188 days yet to prosecute on CR19-1377, and 146 days left under case number CR19-1338.

{¶ 21} Although the record is devoid of any evidence presented by the state to rebut appellant's prima facie case for discharge, the trial court's statement makes clear that its determination that appellant was not entitled to use the triple count provision in R.C. 2945.71(E) was made after entertaining "some discussion" regarding the motions to dismiss and after having considered "some calculation as to the time based upon the multiple charges" that were filed. These facts strongly support the state's contention that "it is likely that the prosecutor responded to the motion[s] during the off-the-record discussion." Because the same trial judge was assigned to both Case 1 and Case 2, the record unequivocally demonstrates that the trial court was aware at the time the motions were filed that appellant was being held on charges in addition to those at issue in Case 1. Based on all of the foregoing, together with the fact that the state received appellant's motions on a scheduled trial date, and, thus, was never given any meaningful opportunity to respond in writing, we find it reasonable to infer, and in so doing we conclude, that the

13.

state, in this case, satisfied its burden to respond during the off-the-record discussion with defense counsel and with the court.

**B. Appellant's statutory right to a speedy trial was not violated.**

**1. The triple-count provision no longer applied after March 4, 2019.**

{¶ 22} A criminal defendant who is charged with a felony offense must be brought to trial within 270 days after the person's arrest. R.C. 2945.71 (C)(2). For each day that a defendant is held in jail in lieu of bail on the pending charge, three speedy trial days are counted. R.C. 2945.71(E). This triple-count provision applies, however, only "to those defendants held in jail in lieu of bail solely on the pending charge." *State v. MacDonald*, 48 Ohio St.2d 66, 357 N.E.2d 40 (1976), paragraph one of the syllabus (construing former R.C. 2945.71(D), now (E)). The Ohio Supreme Court has held that "[w]hen multiple charges arise from a criminal incident and share a common litigation history, pretrial incarceration on the multiple charges constitutes incarceration on the 'pending charge' for purposes of the triple-count provision." *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, paragraph one of the syllabus. The Ohio Supreme Court has further held that where "new and additional charges arise from the same set of facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge." *State v. Adams*, 43 Ohio St.3d 67, 68-69, 538 N.E.2d 1025 (1989). The court has also recognized an exception to the speedy trial timetable for subsequent indictments, holding that "the

14.

state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges or the state did not know of these facts at the time of the initial indictment." *State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883 (1997), syllabus.

{¶ 23} Here, appellant was arrested on February 15, 2019, after the state filed two complaints against him in relation to the charges involving E.B. At the time, he was incarcerated solely on the menacing by stalking and two burglary charges for which he was ultimately indicted in Case 1. However, on March 4, 2019, appellant was indicted in Case 2 for the separate burglary charge involving F.S. At that point, he was no longer incarcerated solely on the charges in Case 1, and so the triple-count provision no longer applied. Additionally, a separate speedy trial time began to run with respect to the separate burglary charge in Case 2.

{¶ 24} Appellant contends that the time for bringing him to trial on the burglary charge in Case 2 should relate back to the date of his arrest, because the charges in both cases were based upon the same set of facts, which the state was aware of at the time of the initial indictment. The holding in *Baker*, however, "is in the disjunctive, so it is fulfilled if either condition is met." *State v. Parker*, 6th Dist. Lucas No. L-18-1238, 2020-Ohio-4607, ¶ 69. Here, it is clear that the charges in each case involved separate offenses, which were committed on different dates, in different locations, and against different victims. The menacing by stalking charge in Case 1 related to the two-month period during which appellant showed up at E.B.'s home unannounced and repeatedly

15.

sent her threatening text messages. The two burglary charges in that case related to the December 29, 2018 and January 5, 2019 break-ins at her home. In contrast, the burglary charge in Case 2 related to the January 4, 2019 break-in at F.S.'s home. Because the charges in each case clearly arose from a separate set of facts, a separate speedy trial time began to run after appellant was indicted in Case 2.

{¶ 25} Appellant also contends that the triple-count provision continued to apply after he was indicted in Case 2, because the charges were related and ultimately proceeded to trial together. In support of this argument, he relies on *State v. Parker*, 6th Dist. Lucas No. L-18-1238, 2020-Ohio-4607. In *Parker*, this court considered whether the defendant's incarceration on a single indictment containing multiple unrelated charges constituted incarceration only on the pending charge. *Id.* at ¶ 79. As part of its consideration, this court looked to a decision from the Second District, which explained that the Ohio Supreme Court's decision in *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032 essentially concluded that the state cannot circumvent the triple count provision by charging related offenses in separate complaints. *Id.* at ¶ 81, quoting *State v. Dankworth*, 172 Ohio App.3d 159, 2007-Ohio-2588, 873 N.E.2d 902, ¶ 38 (2d Dist). Appellant's reliance on this decision is misplaced.

{¶ 26} In *Dankworth*, the Second District pointed out that in *Parker*, the defendant had been arrested in relation to the discovery of a methamphetamine lab, which resulted in the filing of three separate complaints. *Dankworth* at ¶ 33. Because the multiple charges stemmed from a single criminal incident and were brought at the same time, the

16.

Ohio Supreme Court determined that Parker's incarceration on the multiple charges constituted incarceration on the pending charge and entitled him to the triple-count provision. *Id.* at ¶ 34, citing *Parker* at ¶ 21. The Second District explained that, unlike Parker, Dankworth had been arrested in connection with four unrelated offenses that occurred on different dates and against different victims, which resulted in the filing of two separate complaints. *Id.* at ¶ 35.

{¶ 27} Like Dankworth, appellant committed four separate criminal offenses and was subsequently indicted in two different cases. As demonstrated above, the charges in each case involved offenses that were committed on different dates, in different locations, and against different victims, and therefore did not arise from the same criminal incident. Additionally, although the cases were ultimately tried together, the indictments were brought on separate dates and, therefore, did not share a common litigation history. *See State v. Freeman*, 6th Dist. Lucas No. L-09-1086, 2010-Ohio-1357, ¶ 7 and 44 (concluding that even though two cases were handled together, the charges resulted from separate incidents and did not share a common litigation history). Accordingly, the triple-count provision no longer applied after appellant was indicted in Case 2.

**2. Appellant was brought to trial within the statutorily required time period.**

{¶ 28} Finally, the record reflects that appellant was brought to trial within the statutorily required time period. Although the speedy trial clock begins to run on the day a defendant is arrested, the actual day of arrest is not included in the calculation. *State v. Phillips*, 6th Dist. Wood Nos. WD-16-020, WD-16-028, WD-16-029, 2017-Ohio-9063, ¶

17.

12. The clock thus began to run on February 16, 2019 (the day after appellant's arrest) and ran until March 4, 2019 (the day appellant was arrested in Case 2), for a total of 16 days. Because he was incarcerated solely on the charges in Case 1, those days are triple-counted for a total of 48 speedy trial days. After he was indicted in Case 2, the clock ran for one additional single-counted day until the date of the first tolling event, for a total of 49 speedy trial days.

{¶ 29} **Lack of counsel.** On March 5, 2019, Case 1 was called for arraignment. Appellant stated that he was in the process of retaining counsel, but needed additional time. The trial court continued the matter for one week. On March 12, 2019, both Case 1 and Case 2 were called for arraignment. Appellant advised the court that he did not have the funds to retain an attorney due to his incarceration. The court then found him indigent and appointed counsel to represent him in both cases.

{¶ 30} The speedy trial clock is tolled for "[a]ny period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law." R.C. 2945.72(C). Here, the trial court continued the arraignment for one week to provide appellant an opportunity to retain counsel. Because this continuance was necessitated by his lack of counsel, and was not due to the fault of the trial court, the clock was tolled until his arraignment was held on March 12, 2019. The clock then restarted and ran until March 15, 2019 (the next tolling event), for a total of three speedy trial days.

18.

{¶ 31} **Discovery demand.** On March 15, appellant filed a written demand for discovery. A defendant's demand for discovery will toll the clock until the state responds or for a "reasonable time," which this court has concluded is 30 days. *State v. Crawford*, 6th Dist. Lucas No. L-17-1297, 2019-Ohio-2660, ¶ 30. The state filed its initial discovery response on March 25, 2019. Because the state responded within a reasonable time, the clock was tolled until the state's response was filed on March 25, 2019. The clock then restarted and ran until May 14, 2019 (the day of the next tolling event), for a total of 50 speedy trial days.

{¶ 32} **State's continuance.** On May 14, 2019, the matter was called for trial but the state requested a continuance. The prosecutor stated that she was attempting to determine whether a recorded statement from appellant existed and explained that one of the lead investigators on the case was on vacation. Over defense counsel's objection, the trial court granted the request and set the matter for trial on June 4, 2019.

{¶ 33} So long as the record demonstrates the necessity and reasonableness of a continuance, the state's motion to continue will toll the speedy trial clock. *Crawford* at ¶ 32. A continuance based on the state's need to procure a defendant's recorded statement, a key piece of evidence that could either inculpate or exculpate the defendant, is clearly reasonable. Additionally, a continuance based on the prosecutor's assertion that one of the lead detectives on the case was on vacation is also reasonable. *See State v. Hughey*, 9th Dist. Wayne No. 19AP0049, 2020-Ohio-3526, ¶ 8, citing *State v. Saffell*, 35 Ohio

19.

St.3d 90, 92, 518 N.E.2d 934 (1988).  The clock was therefore tolled until the next pretrial was held on June 4, 2019.

{¶ 34} **Court's continuance.**  On June 4, 2019, appellant filed his motions to dismiss.  On the same day, the matter was called for trial.  After denying the motions, the trial court stated, "There has been a convergence of issues as it relates to my office and courtroom availability, and therefore, I am going to avail myself of that time and on the Court's own motion continue today's trial date to a date that fits with everyone's calendars."  The prosecutor then indicated that the state had previously offered appellant a plea to one count of attempted burglary and one count of menacing by stalking.  Defense counsel rejected the offer on appellant's behalf, but noted that they were open to mediation.  The trial court then referred the case to mediation, which was ultimately unsuccessful.

{¶ 35} The speedy trial clock will be tolled for "the period of any reasonable continuance granted other than upon the accused's own motion."  R.C. 2945.72(H).  "In addition to being 'reasonable,' a continuance for the benefit of the state or the court must also be 'necessary.'"  *State v. Crawford*, 6th Dist. Lucas No. L-17-1297, 2019-Ohio-2660, ¶ 32, quoting *State v. Willis*, 6th Dist. Wood Nos. WD-15-006 and WD-15-007, 2016-Ohio-616, ¶ 17.  A continuance based on the trial court's scheduling and docketing conflicts is both reasonable and necessary.  *See State v. Stoddard*, 2020-Ohio-893, 152 N.E.3d 990, ¶ 14 (9th Dist.).  The clock was therefore tolled during this time period.

{¶ 36} Appellant contends that the speedy trial clock was not tolled, because the trial court's journal entry failed to set forth its reasons for continuing the matter. The Ohio Supreme Court has held that "[w]hen sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial." *State v. Mincy*, 2 Ohio St.3d 6, 441 N.E.2d 571 (1982), syllabus. The court has also recognized, however, that when a trial court imperfectly handles a continuance under this provision, a reviewing court may still affirm a conviction "even if the trial court did not expressly enumerate any reasons for justifying the delay when the reasonableness of the continuance is otherwise affirmatively demonstrated by the record." *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 33.

{¶ 37} The trial court's journal entry for the June 4, 2019 hearing states, "Matter called for trial. Upon the Court's own motion to continue trial date. Pursuant to R.C. 2945.02, ends of justice required continuance." The journal entry therefore explicitly states that the matter was continued upon the court's motion and that it was necessary in order to satisfy the "ends of justice." To the extent that the journal entry may still be lacking, this court may "look to other evidence in the record to determine whether the continuance was reasonable and necessary." *Crawford*, 6th Dist. Lucas No. L-17-1297, 2019-Ohio-2660, at ¶ 32. The transcript clearly demonstrates that the continuance was based on issues relating to the judge's office and courtroom availability. Because this

21.

was both reasonable and necessary, the clock was properly tolled until the next pretrial was held, on July 8, 2019.

{¶ 38} **New counsel.** On July 8, 2019, defense counsel orally moved to withdraw from the case, due to a breakdown in the attorney-client relationship. After discussing the matter, the trial court granted the motion to withdraw and appointed new counsel, who subsequently moved the court to continue the case. The trial court granted the request and set the matter for trial on August 27, 2019. The speedy trial clock will be tolled for "[t]he period of any continuance granted on the accused's own motion." R.C. 2945.72(H). Because new defense counsel needed a reasonable continuance in order to become familiar with the case, the clock was tolled until the next pretrial was held on August 8, 2019.

{¶ 39} **Competency evaluation.** On August 8, 2019, defense counsel asked the trial court to order a competency evaluation, despite appellant's unhappiness with this request. Without objection by the state, the trial court granted the request and referred the matter to the Court Diagnostic and Treatment Center. The speedy trial clock will be tolled for "[a]ny period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined." R.C. 2945.72(B). The clock was therefore tolled until the trial court found appellant competent to stand trial, on September 17, 2019.

22.

{¶ 40} To the extent that appellant argues that the continuance should not toll the time period because he did not consent to the evaluation, we find such argument without merit. "It is well-established that a defendant is bound by the actions of counsel in waiving speedy trial rights by seeking or agreeing to a continuance even over the defendant's objections." *State of Ohio v. Timothy M. Glass*, 10th Dist. Franklin No. 10AP-558, 2011-Ohio-6287, ¶ 17, citing *State v. McQueen,* 10th Dist. Franklin No. 09AP–195, 2009–Ohio–6272, ¶ 37, citing *State v. McBreen* (1978), 54 Ohio St.2d 315, 376 N.E.2d 593. The clock restarted and continued to run until trial commenced on October 29, 2019, for a total of 42 speedy trial days.

{¶ 41} As indicated above, the speedy trial clock began on February 16, 2019 (the day after appellant's arrest in Case 1), and ran until March 5, 2019 (the day his arraignment was continued for lack of counsel), for a total of 49 days. The clock restarted on March 12, 2019 (the day of appellant's rescheduled arraignment) and ran until March 15, 2019 (the day appellant filed his demand for discovery), for an additional three days. The clock restarted again on March 25, 2019 (the day the state filed its discovery response) and ran until May 14, 2019 (the day trial was continued at the state's request), for an additional 50 days. The clock restarted for the final time on September 17, 2019 (the day appellant was found competent to stand trial) and ran until October 29, 2019 (the day trial commenced), for an additional 42 days. Because a total of only 144 speedy trial days elapsed in this case, appellant's statutory right to a speedy trial was not violated.

23.

**C. Appellant's constitutional right to a speedy trial was not violated.**

{¶ 42} To determine whether a defendant's constitutional right to a speedy trial has been violated, a court must consider "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant." *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, ¶ 14, quoting *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 22. However, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*, quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In general, a delay becomes presumptively prejudicial as it approaches one year. *Id.*, citing *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1.

{¶ 43} From the date of appellant's arrest on February 15, 2019 to the date his trial commenced on October 29, 2019, a total of 256 days passed. Because a delay of approximately eight months is not presumptively prejudicial, this court need not inquire into the remaining factors.

{¶ 44} Even assuming, arguendo, that the delay in this case satisfied the threshold requirement of a presumptively prejudicial delay, the remaining factors do not weigh in appellant's favor. Although appellant complains that part of the delay resulted from the state's continuing investigation regarding his recorded statement, the state only requested a short continuance of 21 days, from May 14 to June 4, 2019. A "[d]elay that is justifiable and reasonable in time generally does not weigh against the state at all." *State*

24.

*v. Muhammadel*, 1st Dist. Hamilton No. C-190683, 2021-Ohio-567, ¶ 16.  Moreover, the record reflects that a significant amount of the delay occurred after the trial court appointed new defense counsel on July 8, 2019.  While appellant complains that the trial court abused its discretion when it granted defense counsel's request for a competency evaluation, he has not set forth this argument in a separate assignment of error as required by App.R. 16(A)(7).  The reason for the delay is therefore not a factor that weighs in appellant's favor.

{¶ 45} Finally, appellant has failed to demonstrate that the delay in this case resulted in prejudice.  The prejudice factor must be analyzed in light of the following interests that the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, ¶ 22, quoting *Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101(1972).  Here, appellant asserts that he was prejudiced because he was kept in custody for approximately six months and because he was forced to undergo a competency evaluation, despite his objection.  We note, however, that the competency evaluation was ordered for appellant's benefit, in order to ensure that he fully understood the consequences of rejecting a plea offer and that he had the ability to evaluate whether he wanted to risk the possibility of receiving a greater sentence.  Appellant's first assignment of error is without merit and is, therefore, found not well-taken.

**II.  The trial court did not abuse its discretion when it granted the state's challenge for cause and excused Juror No. 11 from the jury.**

{¶ 46} In his second assignment of error, appellant claims that the trial court erred when it granted the state's challenge for cause and excused Juror No. 11 from the jury. In resolving a challenge for cause, "[t]he ultimate question is whether the 'juror sw[ore] that he could set aside any opinion he might hold and decide the case on the evidence, and [whether] the juror's protestation of impartiality [should be] believed." *State v. Madison*, 160 Ohio St.3d 232, 2020-Ohio-3735, 155 N.E.3d 867, ¶ 42, quoting *White v. Mitchell*, 431 F.3d 517, 538 (6th Cir.2005).  Because this determination involves a credibility judgment, a reviewing court must afford deference to the trial judge, who has the ability to see and hear the juror. *Id.*  The trial court's decision will therefore be upheld "unless it is unsupported by substantial testimony, so as to constitute an abuse of discretion." *Id.*

{¶ 47} Appellant argues that the trial court's decision to excuse Juror No. 11 from the jury was not supported by the record.  He asserts that Juror No. 11 did not definitively state that she could not act as a fair and impartial juror in the case, but merely expressed that she was skeptical of her ability to do so.  He further asserts that the responses she provided were insufficient to disqualify her from acting as a juror.  Appellant contends that the trial court should have questioned Juror No. 11 further or allowed the state to exercise a peremptory challenge against her.  He concludes that by failing to do so, the

26.

trial court created an imbalance in the number of peremptory challenges each side had available, to appellant's detriment.

{¶ 48} Ohio law provides a number of reasons that a prospective juror may be challenged for cause in a criminal case. *See* Crim R. 24(C). Crim. R. 24(C) relevantly provides the following reasons that a prospective juror may be challenged for cause:

(9) That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

* * *

(14) That the juror is otherwise unsuitable for any other cause to serve as a juror.

In resolving such a challenge, "[a] trial court has the broad discretion to determine whether a juror has the ability to be impartial," and the court "may rely on the juror's testimony in order to determine that juror's impartiality." *State v. Mendoza*, 10th Dist. Franklin No. 16AP-893, 2017-Ohio-8977, ¶ 50, quoting *State v. Mulvey*, 7th Dist. Belmont No. 08 BE 31, 2009-Ohio-6756, ¶ 21.

27.

{¶ 49} Here, Juror No. 11 specifically stated that she did not know if she could act as a fair and impartial juror in the case because her son had been falsely accused of a crime he did not commit. She also confirmed that she felt strongly about the issue. When defense counsel later asked the prospective jurors if they would want themselves to act as a juror if they had been the accused in the case, he asked Juror No. 11 an additional question before receiving her response. Specifically, he stated, "You told us about the past, is that in your head?" At that point, she responded in the affirmative. Defense counsel did not ask any additional questions, so it is unclear from the record whether Juror No. 11's response constituted a confirmation that she would want herself to act as a juror in the case or a confirmation that she would be thinking of her son's false accusation.

{¶ 50} Despite the absence of follow-up questioning to clarity Juror No. 11's final response, the trial court had the opportunity to observe her demeanor throughout the entire process and to listen to all of her responses. The court then had the discretion to determine whether she had the ability to act as a fair and impartial juror in the case. Based on her initial responses, the trial court could reasonably have concluded that Juror No. 11 would be unable to set aside her feelings regarding the situation with her son and, thus, would be unable to render an impartial verdict. The trial court, therefore, did not abuse its discretion when it granted the state's challenge for cause and excused her from the jury.

**{¶ 51}** Even assuming, arguendo, that it was error to dismiss Juror No. 11 for cause, such error would be deemed harmless. Ohio law provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim. R. 52(A). "In other words the error must have been prejudicial, i.e., it must have affected the outcome of the trial." *State v. Harrison*, 2015-Ohio-1419, 31 N.E.3d 220, ¶ 34 (3d Dist.), quoting *State v. Coonrod*, 4th Dist. Pickaway No. 11CA3, 2012-Ohio-6302, ¶ 30. Notably, appellant does not assert that if Juror No. 11 had remained on the jury, he would not have been convicted of the burglary and menacing by stalking charges. But even if he had, "[a]ny argument that [she] would have voted to acquit is speculative." *Id.*

**{¶ 52}** In order to demonstrate that the excusal of Juror No. 11 was not harmless, appellant contends that the trial court ultimately created an imbalance in the number of peremptory challenges that each side had available, to appellant's detriment. But the record reflects that the state only exercised three of its peremptory challenges, while he exercised all four of his. Even if the trial court had not excused Juror No. 11 for cause, the state could have exercised its final peremptory challenge to excuse her. Accordingly, any error in her excusal was harmless. *See State v. Williams*, 1st Dist. Hamilton No. C-040747, 2005-Ohio-6772, ¶ 22 (concluding that where state had one peremptory challenge remaining, any error in the excusal of a juror for cause was harmless). Appellant's second assignment of error is, therefore, found not well-taken.

**III. Appellant's conviction for burglary was not against the manifest weight of the evidence.**

{¶ 53} In his third assignment of error, appellant claims that his convictions were against the manifest weight of the evidence. A challenge to the weight of the evidence questions whether the state presented enough evidence to meet its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). When reviewing such a challenge, an appellate court will sit as a thirteenth juror, and must review the entire record to weigh the evidence and all reasonable inferences, and to consider the credibility of all witnesses. *Id.* The court must then determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

{¶ 54} The indictments in this case charged appellant with one count of menacing by stalking, in violation of R.C. 2903.211(A)(1), and three counts of burglary, in violation of R.C. 2911.12(A)(2). The trial court instructed the jury that the first count of burglary related to the first break-in at E.B.'s home, the second count of burglary related to the second break-in at E.B.'s home, and the third count of burglary related to the break-in at F.S.'s home. The jury ultimately found appellant guilty of the first count of burglary and the menacing by stalking charge, but not guilty of the remaining two counts of burglary.

{¶ 55} Although appellant's heading for this assignment of error indicates a challenge to both of his convictions, the argument he presents relates only to his conviction on the first count of burglary. Specifically, he argues that his conviction was

30.

against the manifest weight of the evidence because the jury acquitted him on the second and third counts of burglary. He asserts that the jury clearly had doubts about the state's evidence concerning the identity of the perpetrator of those offenses, especially in light of the fact that his DNA matched that of the blood found on the wall after the third burglary. He therefore concludes that the jury should also have had doubts about the state's evidence concerning the first count of burglary.

{¶ 56} Appellant's contention that the jury had doubts about the state's evidence concerning his identity as the perpetrator of the offenses is entirely speculative. It is possible that the jury believed that he had committed the acts that were involved in the offenses, but also found that another element of the offense had not been satisfied. For example, E.B. testified that after the first break-in, she went to stay with her mother for a while and returned to her house periodically to check on things. The jury may well have found that E.B. was not "present or likely to be present" at the time the offense was committed. It is also possible that the jury could have acquitted him on the second and third counts of burglary as the result of leniency. *See State v. Nesbitt*, 5th Dist. Stark No. 2017CA00234, 2018-Ohio-4222, ¶ 31, quoting *State v. Fraley*, 5th Dist. Perry No. 03CA12, 2004-Ohio-4898, ¶ 15 ("An inconsistent verdict may very well be a result of leniency and compromise by the jurors, rather than being caused by jury confusion.").

{¶ 57} The fact that the jury acquitted appellant on the second and third counts of burglary does not affect the validity of his conviction on the first count of burglary. In order to prove his identity as the perpetrator of that offense, the state introduced evidence

31.

that in the weeks leading up to December 29, 2018, appellant had shown up at E.B.'s home unannounced and had sent her multiple threatening text messages. The evidence further showed that the last text message was sent to her approximately four days before the offense and contained a similar message to the note that E.B. found on her refrigerator immediately after the break-in. Finally, text messages found on appellant's cell phone indicted that on the same day that the offense occurred, appellant was attempting to sell the same types of electronics that had been stolen from E.B.'s home. For all of the foregoing reasons, we find that the jury, in convicting appellant on the first count of burglary, neither lost its way nor created a miscarriage of justice. Appellant's third assignment of error is, therefore, found not well-taken.

**IV. The record does not contain clear and convincing evidence to demonstrate that the trial court imposed a vindictive sentence.**

{¶ 58} In his fourth assignment of error, appellant claims that the trial court imposed a vindictive sentence in retaliation for his decision to exercise his constitutional right to a jury trial. In making this argument, he relies on *State v. Stafford*, 158 Ohio App.3d 509, 2004-Ohio-3893, 817 N.E.2d 411 (1st Dist.) for the proposition that a rebuttable presumption of vindictiveness arises when a trial court involves itself in the plea bargaining process and discusses a tentative sentence, but then imposes a harsher sentence after the defendant rejects the plea offer and instead decides to proceed to a jury trial. *Id.* at ¶ 15. Appellant asserts that the trial court involved itself in the plea bargaining process by referring the case to mediation and in ordering a competency

32.

evaluation, thereby creating the rebuttable presumption that the court subsequently imposed a vindictive sentence after he rejected the state's plea offer and instead elected to proceed to trial.

{¶ 59} The Ohio Supreme Court has recently confirmed that "a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8. However, the court also declined to apply a presumption of vindictiveness when a defendant receives a harsher sentence following his rejection of a plea offer, and instead held that the defendant bears the burden to prove actual vindictiveness. *Id.* at ¶ 18. In resolving such a claim, a reviewing court must review the entire record -- including the trial court's statements, the evidence presented at trial, and the information presented at sentencing -- to determine whether there is evidence of actual vindictiveness on the part of the trial court. *Id.* at ¶ 19. The sentence will be reversed only if the reviewing court clearly and convincingly finds that the sentence is contrary to law because it was imposed based upon actual vindictiveness. *Id.*

{¶ 60} As previously noted, appellant relies on *State v. Stafford* in support of his argument. But that case is distinguishable. In *Stafford*, the trial court's statement indicated that it would likely impose a sentence of 11 years if Stafford accepted the offered plea deal, but suggested that it would impose a sentence of 23 years if he went to trial. *Stafford* at ¶ 17-22. The First District found that these statements constituted a "blatant threat" that the trial court would impose a heavier sentence if he exercised his

33.

constitutional right to a jury trial and therefore demonstrated actual vindictiveness. *Id.* at ¶ 26-27. In contrast, at no point did the trial court in this case indicate that it would likely impose a specific sentence if appellant accepted the plea deal. Nor did the court threaten that it would impose a harsher sentence if he went to trial.

{¶ 61} Nevertheless, appellant points to three comments made by the court before the case proceeded to trial. The first two comments were made at the June 4, 2019 pretrial hearing. After the state placed the plea offer on the record, the court stated, "And I assume the defense has explained to his client the differences in time and sentencing -- at sentencing the potential for a lengthy versus a non-lengthy sentence." When defense counsel subsequently rejected the plea offer on appellant's behalf but noted they were open to mediation, the court stated that it was "pleased by that, because I think the risk of rejecting that plea offer is just too great, but, you know, maybe in mediation there could be a meeting of the minds." The third, and final, comment was made at the August 8, 2019 pretrial hearing. After appellant's second appointed counsel requested the competency evaluation, the court made the following statement:

> I will note that on prior occasions I know there's been some difficult communications between defense and defense counsel -- prior defense counsel and defendant regarding plea offers that have been made by the State, the potential penalties and sentences, and that there has appeared, at least to this Court, there may be issues with the understanding of what the consequences are with proceeding to trial versus the plea offer that was

34.

made previously. So I'm going to agree with Defense Counsel that it probably would be beneficial to defense for a referral to Court Diagnostic Center for evaluation.

{¶ 62} The above comments are insufficient to satisfy appellant's burden to demonstrate that the trial court imposed a vindictive sentence. If appellant went to trial and was convicted of the menacing by stalking charge and all three burglary charges, he faced a potential maximum sentence of 25 years and six months in prison. *See* R.C. 2929.14(A)(4) (fourth degree felony carries a potential sentence of six to 18 months) and (A)(2)(b) (second degree felony carries a potential sentence of two to eight years). However, if he accepted the plea offer and was convicted of the menacing by stalking charge and the attempted burglary charge, he only faced a potential maximum sentence of four years and six months. *See* R.C. 2929.14(A)(3)(b) (third degree felony carries a potential sentence of nine to 36 months).

{¶ 63} Although the court referred to the potential for a "lengthy versus a non-lengthy sentence" and noted that "there may be issues with the understanding of what the consequences are with proceeding to trial versus the plea offer," the court was not urging appellant to accept the plea deal or expressing its intent to impose a harsher sentence if he elected to go to trial. The court was simply ensuring that he fully understood the consequences of rejecting the plea offer and that he had the ability to evaluate whether he wanted to risk the possibility of receiving a greater sentence. *See Rahab,* 150 Ohio St.3d

152, 2017-Ohio-1401, 80 N.E.3d 431, at ¶ 21. Appellant's claim that the court's pre-trial comments demonstrate the court's intent to impose a vindictive sentence is, therefore, without merit.

{¶ 64} Finally, the record from the sentencing hearing does not support a conclusion that the trial court imposed a vindictive sentence. At the sentencing hearing, the court did not discuss the fact that appellant had exercised his constitutional right to a jury trial or otherwise suggest that he should have accepted the plea offer. Moreover, although it could have, the court did not impose maximum or consecutive sentences. Accordingly, the record does not contain clear and convincing evidence to demonstrate that the trial court imposed a vindictive sentence. *See State v. Marie*, 6th Dist. Sandusky No. S-19-009, 2019-Ohio-3815, ¶ 15 (actual vindictiveness was not found where the trial court "made no mention whatsoever of the plea offer"); *State v. Carney*, 1st Dist. Hamilton No. C-160660, 2017-Ohio-8585, ¶ 16 (actual vindictiveness was not found where the trial court did not impose maximum sentences). Appellant's fourth assignment of error is, therefore, found not well-taken. We affirm the judgment of the Lucas County Court of Common pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                    _____
                                                                                    JUDGE

Thomas J. Osowik, J.

                                                                   _____
Gene A. Zmuda, J.                                                          JUDGE
CONCUR.

                                                                   _____
                                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

37.